IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 1999 Session

## STATE OF TENNESSEE v. TIMOTHY C. HUTSON

**Appeal from the Criminal Court for Davidson County**
**No. 98-B-1496     Steve R. Dozier, Judge**

---

**No. M1999-00329-CCA-R9-CD - Filed August 18, 2000**

---

This appeal arises from the order of the Davidson County Criminal Court upholding the district attorney general's refusal to accept the application of the defendant, Timothy C. Hutson, for pretrial diversion. The defendant asserts that the trial court erred in failing to determine that the district attorney general abused his discretion by relying on facts not supported by the evidence and by failing to consider all relevant factors. We conclude that substantial evidence was before the district attorney general to support the validity of each factor relied on in denying pretrial diversion and that there was substantial evidence to show that the district attorney general considered all relevant factors. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Charles R. Ray and Jeffery S. Frensley, Nashville, Tennessee, for the appellant, Timothy C. Hutson.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Kymberly L.A. Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Timothy C. Hutson, appeals by permission the order of the Davidson County Criminal Court upholding the district attorney general's refusal to accept the defendant's application for pretrial diversion. The defendant alleges that the trial court erred in failing to determine that the district attorney general abused his discretion by relying on factors not supported by the evidence and denying the defendant's application without considering all relevant factors. We conclude that the trial court properly determined that the district attorney general acted within his discretion in denying the defendant's application for pretrial diversion. Accordingly, the judgment of the trial court is affirmed.

# BACKGROUND

The record establishes that the defendant, over a period of time from May to September 1996, embezzled some $16,000 from his former employer, Skyline MidSouth, Inc., on seventeen different occasions. As manager of accounting and finance, the defendant was in a position to divert funds that were rightfully owed to vendors of his employer into his own personal account. The defendant was indicted June 16, 1998, for theft of property valued at $10,000 or more but less than $60,000, a Class C felony, in violation of Tennessee Code Annotated Section 39-14-103.

The defendant, through counsel, applied for pretrial diversion by letter addressed to the district attorney general's office dated October 9, 1998. That request was formally denied by letter from the Office of the District Attorney General dated February 3, 1999. The defendant filed a petition for writ of certiorari with the Davidson County Criminal Court in conformity with Tennessee Code Annotated Section 40-15-105(b)(3) (Supp. 1999), for review of the denial of his application.

Pursuant to the petition for certiorari, a hearing was held in the trial court on February 12, 1999.[1] At the hearing, the sole witness was General Haas, who had authored the letter on behalf of the Davidson County District Attorney General denying the defendant's request for pretrial diversion. She was called as a witness by the defendant.

Following the hearing, the trial court determined that the district attorney general had not abused his discretion in denying the defendant's application and set the matter back on the docket. The defendant applied to the trial court for permission to appeal its order to this court, and the trial court granted permission to appeal. This interlocutory appeal is now before us for disposition.

# ANALYSIS

Our legislature has provided that the decision to grant pretrial diversion should rest within the discretion of the district attorney general. See Tenn. Code Ann. § 40-15-105; see also State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999) ("[W]hether to grant pretrial diversion to a qualified defendant who is statutorily eligible is a determination that lies in the discretion of the district attorney general."). The discretion vested in the prosecutor is not unbridled; "[i]t must be exercised so as to serve the interests of justice." Pace v. State, 566 S.W.2d 861, 864 (Tenn. 1978). Thus, upon proper application of the defendant, the decision of the prosecutor is subject to review by the trial

---

[1] The defendant in his petition to the trial court challenged, *inter alia*, the district attorney general's finding of "recurring criminal behavior." The petition should include the "record . . . thus far compiled" and should identify any "disputed fact" which the prosecutor failed to identify in the denial letter. State v. Winsett, 882 S.W.2d 806, 810 (Tenn. 1993). In our view, this "disputed fact" justified the evidentiary hearing that was held in response to the defendant's petition for writ of *certiorari*. At the hearing, the defendant called the assistant prosecutor who wrote the denial letter and questioned her about the "recurring criminal behavior" which she relied upon to deny the diversion request. However, we remind trial courts that evidentiary hearings on the petition for *certiorari* must be used "only to resolve any factual disputes raised by the prosecutor or the defendant . . .[,] but [the trial courts are] not to hear additional evidence." State v. Curry, 988 S.W.2d 153, 157-58 (Tenn. 1999).

court for abuse of prosecutorial discretion. See Tenn. Code Ann. § 40-15-105(b)(3). The decision of the prosecutor is presumptively correct, and the trial court will reverse that decision only upon a showing by the applicant that there has been a patent or gross abuse of prosecutorial discretion. See State v. Houston, 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995) (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1993)). An abuse of discretion in this context requires that the record show "an absence of any substantial evidence to support the refusal of the District Attorney General to enter into a memorandum of understanding." Hammersley, 650 S.W.2d at 356; see also Curry, 988 S.W.2d at 158 (noting that the record "must show an absence of any substantial evidence to support the refusal of the district attorney general to enter into a memorandum of understanding before a reviewing court can find an abuse of discretion").

Our supreme court has observed that "[t]he task thus imposed upon prosecutors of deciding which defendants are worthwhile candidates for diversion is indeed a demanding one." Hammersley, 650 S.W.2d at 353. It is demanding because, as stated by our supreme court:

> Almost all criminal defendants, whether first offenders or not, would claim remorse and ascribe to themselves a desire to walk the straight and narrow if presented an opportunity to avoid prosecution; the responsibility placed upon prosecutors to pick and choose among the lot based upon a particular candidate's amenability to rehabilitation or recidivism requires the exercise of unusual powers of discrimination.

Id. While our legislature has defined a "qualified defendant" as one who meets statutory requirements set out in Tennessee Code Annotated Section 40-15-105(a)(1)(B)(i),[2] the courts have provided guidance to prosecutors in determining which defendants among those who pass the statutory requirements are then suitable for pretrial diversion. See Curry, 988 S.W.2d at 157 ("One who is statutorily eligible is not presumptively entitled to diversion."). The factors that are relevant to the prosecutor's determination should focus on the defendant's "amenability to correction." Id. (quoting State v. Pinkham, 955 S.W.2d 956, 959-60 (Tenn. 1997)). With this focus in mind, the prosecutor should consider the following:

---

[2]According to this section, a "qualified defendant" must meet each of the following requirements:
> (a) The defendant has not previously been granted pretrial diversion under the provisions of this chapter;
> (b) The defendant does not have a prior misdemeanor conviction for which a sentence of confinement is served or a prior felony conviction within a five-year period after completing the sentence or probationary program for such prior conviction; and
> (c) The offense for which the prosecution is being suspended is not a Class A or Class B felony, a sexual offense, driving under the influence of an intoxicant as prohibited by § 55-10-401, or vehicular assault as prohibited by § 39-13-106.

> [T]he defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

Id. (relying on Hammersley, 650 S.W.2d at 355). Pretrial diversion represents the benevolence of the State in that diversion may result in dismissal of the prosecution and expungement of the defendant's record.[3]

If the decision is to refuse to enter into a memorandum of understanding for pretrial diversion, the prosecutor's response must be formal and in writing given the limited nature of certiorari review and should include:

(1) An enumeration of all the evidence considered;

(2) An enumeration of the relevant factors considered and how some factor or factors controlled the decision or outweighed other factors;

(3) An identification of any disputed issues of fact.

See id., see also State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993), perm. app. denied (Tenn. 1994). The only evidence the trial court may consider on a grant of certiorari is the evidence that was considered by the district attorney general. See Curry, 988 S.W.2d at 157 (citing Winsett, 882 S.W.2d at 810). A hearing in this context should be "only to resolve any factual disputes raised by the prosecutor or the defendant concerning the application, but not to hear additional evidence that was not considered by the prosecutor." Id. at 157-58. A hearing "may be useful to clarify matters already in the record about which there may be some dispute." Winsett, 882 S.W.2d at 810. The role of the trial court is to determine whether there is any substantial evidence in the record to support the district attorney general's refusal to enter into a memorandum of understanding for

---

[3]The applicable law states:

> (e) DISMISSAL WITH PREJUDICE. The trial court shall dismiss with prejudice any warrant or charge against the defendant upon the expiration of ninety (90) days after the expiration of the period of suspension specified in the memorandum of understanding is filed; provided, that no termination of the memorandum of understanding has been filed under the provisions of subsection (d). If the prosecution is dismissed with prejudice, jeopardy shall attach, and the court shall make a minute entry to that effect. Upon dismissing any warrant or charge against the defendant pursuant to this section, the judge shall send or cause to be sent a copy of the order of dismissal to the Tennessee Bureau of Investigation for entry into its expunged criminal offender and pretrial diversion database. Such order shall include the name of the defendant, the defendant's date of birth and social security number, the offense for which diversion was granted, the date diversion was granted and the date the charge or warrant was dismissed.

Tenn. Code Ann. § 40-15-105(e) (Supp. 1999).

pretrial diversion because, if there is any substantial evidence, the district attorney general cannot, as a matter of law, have abused his discretion in denying diversion.

The appropriate standard of review for the appellate court is somewhat less clear. Cases have indicated that the trial court's findings of fact in pretrial diversion cases are presumed correct unless the evidence of record preponderates against those findings. See State v. Lutry, 938 S.W.2d 431, 434 (Tenn. Crim. App. 1996) ("For purposes of our review, the findings of the trial court are binding on this court unless the evidence preponderates against such findings."). The presumptive correctness relates to the trial court's factual findings, and these are presumed correct unless the evidence of record preponderates against them. See State v. Helms, 720 S.W.2d 474, 476 (Tenn. Crim. App.), perm. app. denied (Tenn. 1986) ("It is true that on appeal from the action of the trial judge in diversion cases, the trial judge's finding of fact is binding on this court unless we find that the evidence preponderates against the trial judge's finding.").

In Helms, this court went on to distinguish the standard when the facts were not in dispute: "However, in the case at bar, the facts are undisputed. Therefore, the trial judge erroneously reversed the action of the District Attorney General since there was substantial evidence to support the prosecutor's refusal to enter into a memorandum of understanding." Id. In State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993), the evidence was also undisputed, and this court stated, "[O]ur review relates solely to whether or not there is any substantial evidence in the record to support the prosecutor's refusal to enter into a memorandum of understanding for pretrial diversion." Similarly, we recently described our role in appeals taken from a denial of pretrial diversion in the following way: "Our role is limited to determining whether any substantial evidence exists to support that decision within the frame work of these factors [the Hammersley factors]. . . . [T]he trial court's findings of facts are binding on us unless the evidence preponderates against such findings." State v. Houston, 900 S.W.2d 712, 714-15 (Tenn. Crim. App. 1995). The "preponderance of the evidence" standard, then, applies to the trial court's findings of fact where facts are disputed. "Any substantial evidence" is the abuse of discretion standard, which the trial court applies to the determination of the prosecutor and which we, in turn, apply to the judgment of the trial court.[4] It is logical that this court not apply a stricter standard to the conclusions of the trial court than the trial court applied in reaching those conclusions in the first place. This standard—abuse of discretion based on whether or not there is any substantial evidence in the record to support the determination of the prosecutor—weighs heavily in favor of the decision of the prosecutor and then the decision of the trial court.

### ISSUES

---

[4]We note that this approach appears to vary from that stated by our supreme court in Curry where the court referred to a preponderance of the evidence standard without distinguishing whether this was to be applied to the findings of fact where there is a dispute or to the final conclusions of the trial court. This difference is significant since "preponderance of the evidence" is a stricter standard than is "any substantial evidence." See Laws v. Celebrezze, 368 F.2d 6409, 642 (4th Cir. 1966) (defining substantial evidence as "more than a mere scintilla of evidence but may be somewhat less than a preponderance"). Even if we were to apply a preponderance of the evidence standard to the conclusion of the trial court here, the outcome of this appeal would not be altered.

Here, there are no facts in dispute. The defendant has not contested the prosecutor's portrayal of the circumstances under which he embezzled monies from Skyline MidSouth, Inc.; the amount embezzled; or the extent of time during which the criminal conduct continued.[5] Therefore, we review the judgment of the trial court to determine whether there is any substantial evidence to support the prosecutor's denial of pretrial diversion.

The defendant's complaint is that the evidence does not support the position taken by the district attorney general in the letter of denial and that he failed to consider all the relevant factors, relying instead on circumstances of the crime and deterrence.

## A. Letter of Denial

The district attorney general's letter of denial of pretrial diversion enumerates the evidence he considered, which includes the report of the sheriff's office, the facts and circumstances of the offense,[6] and the taped interview with the defendant. The defendant contends that this evidence does not support the five reasons stated for denying his request for pretrial diversion.

As to the first reason for the denial— the circumstances of the crime—the letter noted the recurring nature of the criminal behavior of the defendant as signifying that this was not a single, impulsive act, which is more easily explained, but an ongoing plan of criminal conduct. The record also indicates that the activity stopped only when Skyline discovered the theft. The following exchange took place at the interview between the defendant and the prosecutor on January 4, 1999:

Q. At what point in time did it become apparent to you that what you were doing was illegal?

---

[5]The following chronology, gleaned from the record, is not disputed:

| | |
|---|---|
| Early 1996 | While separated from wife, who remains in Dallas, Texas, with their three children, defendant moves to Nashville to assist elderly grandmother. |
| April 1996 | Defendant begins work for Skyline MidSouth, Inc., as manager of finance and accounting; defendant's age is 37. |
| May-Sept 1996 | Defendant embezzles funds totaling some $16,000 from Skyline. |
| Sept. 1996 | Defendant and wife reconcile and she moves with children to Nashville. |
| Nov. 1996 | Defendant is fired from position at Skyline. |
| Dec. 1997 | Defendant begins treatment for alcoholism with Ann Doak. |
| July 1997 | Defendant begins work with new firm, P.I.C., in Franklin, Kentucky. |
| Feb. 1998 | Defendant begins construction on $225,000 home in Lebanon, Tennessee. |
| June 1998 | Defendant is indicted for theft of funds from Skyline. |

[6]The district attorney general's letter refers to "the facts and circumstances of the offense as summarized in the attached Memoranda," but no attached memoranda are included as part of the defendant's appendix to petition for writ of certiorari.

A. Well, after my wife came back up . . .

Q. And when did she come in?

A. It was in, like in the beginning of '97 [sic] after this, you know, when she came up to start the new school year and she saw how much that I was drinking, that I had been drinking and had really said, you know, that "You need to get help," and I was really ugly and hateful to her about that. . . . [A]nyway, then I finally went to Skyline and told them I am having a real bad time with my alcohol and I need help, I need help. And, you know, then subsequent to that I was terminated from my job.

Q. Why do you believe you were terminated?

A. Well, I mean, they didn't give me any reason, you know, at the time. They just sent me a letter. They did ask me about the checks and I was going, "Well, I don't know. I cannot tell you." And, uh, so I don't know whether it was that or was the alcohol or that I just didn't have a good excuse as to what I had done. . . .

When asked about the shape of the accounting system at Skyline, the defendant described it as "a total mess." The prosecutor questioned him on this point:

Q. Mr. Hutson, do you think that somebody, a logical person, could easily see the situation that you were in as one where you realized when you started working for Skyline, that it was, in essence, a perfect opportunity to steal from the company without the company knowing it because of the state of their accounting procedures?

A. I . . .

Q. I mean, it was easy for you, wasn't it?

A. Yes, it . . .

Q. And you got away with it?

A. No, I didn't.

Q. Well, you did for quite some time, didn't you?

A. And, you know, there was no controls there.

The defendant had been in a trusted position for approximately one month when he embarked on a pattern of stealing from his employer. The fact that he was in a position to take criminal advantage of a state of disarray and quickly and repeatedly did so is substantial evidence that supports the circumstances of the crime as a ground for denying pretrial diversion.

Second, the prosecutor points to the defendant's failure to take action to admit his wrongdoing in a timely fashion and to respond appropriately to his responsibilities for the wrongs committed. The defendant responded to questions concerning what he did with the thousands of dollars he stole in the following way:

> Q. What did you do with the money that you received?
>
> A. Well, that was one of the things that my wife had asked me as well. And like I told her, I don't have a good . . . I don't have anything to show for it.
>
> Q. Can you give us a hint? Because over a five month period of time we show that you stole $16,000. What happened to that money? What did you do with it?
>
> A. Well, I mean, I don't know. There's a long period of time between that I have no recognition, or recollection of it at all. I mean . . .
>
> Q. Do you have a clue as to what you did with it?
>
> A. No, ma'am, I don't.

Although the defendant blamed alcohol for his troubles, he admitted that he did go to work "pretty much" on a daily basis during this period. The prosecutor also pointed out that the checks written by the defendant on Skyline's account to himself were neatly and carefully written in very specific amounts, such as $596.53, usually amounts Skyline owed to vendors, and showed no signs of being written by someone incapacitated by alcohol. There was substantial evidence to support the district attorney general's second ground, a failure to accept responsibility in a timely fashion.

Third, the letter contends that criminal prosecution is necessary to deter the defendant from future criminal acts. The prosecutor questioned the defendant about his relationship with his new employer during their interview, and the following facts emerged:

> Q. What did you tell them [new employer] that the reason was for your termination by Skyline?

A. I told them the truth that I had been . . . that I was an alcoholic and that when I was working for Skyline that I had taken some money and that I was working to get that resolved, you know, through the courts.

Q. Who did you tell at your current place of employment?

A. Blake Russell, who is my boss.

Q. Ok. So, you're saying that he knew that before he hired you?

A. No, he did not; he did not know that until recently.[7]

The prosecutor also questioned the defendant concerning his present situation:

Q. And what house is it that you are living in in Lebanon now?

A. It's over on Point Barton Lake.

Q. Can you tell me the approximate value of the home that you currently have?

A. $225,000.

Q. And when did you purchase that home?

A. We're buying it now. Well, we built the house.

Q. Tell me the date please that you began construction on this home in Lebanon?

A. Well, it was in February of last year.

Q. Ok. February of '98?

A. Yes, ma'am.

Both the district attorney general and the trial court attached great weight to the factor of deterrence. The trial court, in upholding the prosecutor's denial of pretrial diversion, stated that "the Court attached great weight to the deterrence factor, and agrees with the District Attorney General that practices such as this require deterrence." Although the defendant asserts that his current employment does not involve writing checks or touching any money, the evidence considered by the

---

[7]According to the defendant, a treacherous cousin called his present employer with information about his criminal activities at Skyline, and this forced him to come forward.

district attorney general, including the defendant's speedy move to take advantage of the state of affairs at Skyline; his pursuit of an affluent lifestyle at the very time he was facing criminal charges, including building a $225,000 home; and his tendency to manipulate responses to questions so that an answer appears favorable until skilled questioning reveals otherwise all are substantial evidence and support the factor of need for deterrence.

As to the fourth reason in the letter of the district attorney general—the fact that the defendant had not made any attempt to pay restitution—the defendant provided the following evidence during the taped interview:

> Q. Okay. What attempts did you make to make restitution to Skyline?
>
> A. Well, when, as I mentioned, when they were asking me to tell them how much I had done and I told them I didn't know. And they were going, "Well, you've got to tell us." Well, that's when I sought legal help just to make sure that, you know . . .
>
> Q. Just to make sure what?
>
> A. Just to make sure I was doing the right things.

The defendant explained that it was his attorney who advised him to do nothing and wait and see what Skyline would do. Within seven months of being fired from Skyline, the defendant was earning $45,000 a year at P.I.C. and yet took no steps to restore the funds he stole from Skyline. The district attorney general pointed to this failure as indicative of the defendant's willingness to blame Skyline for lacking proper control rather than taking full responsibility for his criminal acts. This fourth factor is supported by substantial evidence and is a valid factor.

The fifth and final factor on which the district attorney general based the denial of pretrial diversion is the defendant's lack of remorse, which the prosecutor contends indicates that the defendant is not amenable to correction. The defendant's partial denial of the crime—for example, his response that he had no idea about a check he issued to a fictitious company, T.A.E.—indicated to the district attorney general that the defendant was not amenable to correction because of his lack of appreciation of the wrongfulness of his conduct or remorse for having hurt his employer. That is not to say that the defendant is not sorry to be in the situation in which he finds himself. As he stated in his interview, he wants to make amends, just not at too high a price. There was substantial evidence to support the factor of lack of remorse.

In reviewing each of the factors set out by the district attorney general, we conclude that substantial evidence was before the district attorney general to support the validity of each factor relied on in denying pretrial diversion.

## B. Consideration of All Relevant Factors

The defendant asserts that the district attorney general abused his discretion in denying his application for pretrial diversion by failing to consider all relevant factors and relying primarily on the circumstances of his crime and the need for deterrence. The defendant correctly asserts that the circumstances or seriousness of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been considered. See Curry, 988 SW.2d at 158 (citing State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)).

Criteria for the letter of denial are judicially imposed. Our supreme court has made it imminently clear that this letter must be more than a mere "abstract statement." State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989). "Only by analyzing all of the relevant factors, including those favorable to the defendant, can appropriate candidates for this legislative largess be identified in a manner consistent with the purpose of the pretrial diversion act." Id. If the district attorney general bases the decision on factors felt to outweigh others submitted for consideration, there must be an indication why those factors outweigh others. See id. Without this complete analysis, no prosecutor should be surprised when either the trial court or this court determines that prosecutorial discretion, which is significant in pretrial diversion cases, has been abused. Although we have determined that no prosecutorial abuse of discretion occurred in this case, the letter of denial here was not fully in compliance with Herron.

We conclude, however, that the prosecutor's denial of the diversion request was not based entirely upon the circumstances of the offense. The letter communicates the prosecutor's substantial concerns with the defendant's lack of amenability to correction based upon his failure to tender restitution and his lack of remorse and candor, factors which are outside the nature and circumstances of the offense itself. As indicated above, we believe the record contains substantial evidence supporting these conclusions, and we believe these concerns justify a denial of pretrial diversion in this case.

Although the denial letter does not expressly articulate that the prosecutor considered all of the Hammersley factors, it referenced an "attached Memoranda," upon which the prosecutor relied. The memoranda were not made a part of the record via the defendant's petition for writ of *certiorari*. It was the defendant's responsibility to present with his petition the record as had been compiled to that point. State v. Winsett, 882 S.W.2d 806, 810 (Tenn. 1993). Without the complete letter and its incorporated components, we cannot conclude that the prosecutor failed to consider all of the required factors.

**CONCLUSION**

We conclude that there is substantial evidence to support the district attorney general's denial of pretrial diversion, and, therefore, the district attorney general did not abuse his discretion in refusing to enter into a memorandum of understanding for pretrial diversion with the defendant. Accordingly, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE