IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2003

**STATE OF TENNESSEE v. TRAVIS ANDERSON**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. W03-00001, W03-00004     Bernie Weinman, Judge**

_____

**No. W2003-00674-CCA-R3-CD  - Filed December 30, 2003**

_____

The Defendant, Travis Anderson, pled guilty to two counts of aggravated burglary, with an agreed sentence of three years on each count to be served concurrently.  Pursuant to the plea agreement, the trial court was to determine whether the Defendant merited for alternative sentencing.  Following a sentencing hearing, the trial court denied the Defendant's application for judicial diversion, suspended his sentence for three years, and placed the Defendant on probation for three years.  On appeal, the Defendant contends that the trial court erred in refusing to grant his application for judicial diversion.  Finding no error, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

W. Mark Ward, Assistant Shelby County Public Defender, for the appellant, Travis Anderson.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General, and Mike Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

**Opinion**
**I.  Facts**

The Defendant, Travis Anderson, pled guilty to two counts of aggravated burglary, a Class C felony, with an agreed sentence of three years on each count to be served concurrently.  Pursuant to the plea agreement, the Shelby County Criminal Court held a sentencing hearing to determine whether the Defendant qualified for either probation or judicial diversion.  Following the sentencing hearing, the trial court denied the Defendant's application for judicial diversion, but found that the Defendant qualified for probation.  Accordingly, the trial court suspended his sentence for three years and placed the Defendant on probation for three years.  The Defendant now appeals.

At the guilty plea proceeding held on January 23, 2003, the State presented the following facts regarding the Defendant's involvement in two burglaries that occurred in November of 2002, and the Defendant stipulated to these facts. On November 12, 2002, the home of Phillip Stegall, located in Memphis, was burglarized, and the intruders stole ten firearms, including five high-powered rifles. Detectives with the Memphis Police Department discovered fingerprints at the crime scene that matched the Defendant's fingerprints. On November 14, 2002, the home of Wayne Newsom, also located in Memphis, was burglarized by intruders who kicked in the rear door and stole a small safe. A witness observed the incident and called the police. Police initially arrested four suspects, and the investigation revealed that the Defendant was also involved in this burglary. Police officers arrested the Defendant on November 15, 2002, and brought him to the police station, where he gave a written statement admitting to his involvement in the burglary of Stegall's house. About a week after this confession, the Defendant, while still in custody, admitted to participating in the burglary of Newsom's house.

The following evidence was presented at the sentencing hearing held on February 14, 2003. The Defendant testified that he was eighteen years old and lived with his mother in Memphis. He stated that he attended Julia B. Hooks High School until he was arrested for burglary in November of 2002. The Defendant reported that, before he quit school, he was in the eleventh grade and participated in wrestling. He explained that he participated in the burglaries because he "hung around" the wrong people on those days. The Defendant stated that he burglarized those homes "just to do something, have fun." He reported that he burglarized the homes with four of his classmates at school and that he was not thinking when he participated in the crimes. He explained that, while he did not steal anything from the houses, his accomplices stole some items and he expected to receive some money from the pawned items. The Defendant testified that he and his accomplices were arrested before they could sell the items. He stated that if he received probation he would not associate with those former classmates anymore because "I know they [are] the wrong people to hang around with." The Defendant explained that he spent three months in jail because his mother refused to make bond. He testified that, if the court placed him on probation, "I plan to go to college. I got scholarships to go to college. If I finish–I still got a chance to graduate. If I go back to high school and graduate, I still got scholarships [for] wrestling." He stated that he could comply with the requirements of probation.

On cross-examination, the Defendant stated that he did not know either Stegall or Newsom when he burglarized their houses. He explained that Stegall and Newsom were probably mad because he "broke into" their homes and stated, "I don't want [any]body to break into my house." The Defendant stated that he should not be sent to jail because "[i]f I got another chance, I can make it . . . right." He explained that he would "[w]ork and pay them what they still say they're missing. . . ."

The trial judge then asked the Defendant to explain why he burglarized the two houses, and the Defendant stated, "We were just sitting down at my house, and they were saying like I know this dude that's got this . . . got this . . . so let's go over there. So we just went over there." He explained that he and his accomplices took a "little white safe" from Stegall's house and "one little gun" from

Newsom's house. The Defendant stated that one of his accomplices kept the gun at his house because the Defendant could not bring any guns into his home. When asked how he was "going to make it right" with Stegall and Newsom, the Defendant replied, "Just pay them back for the damage that's been done." The Defendant explained that he burglarized the homes because he thought that he was going to get something for nothing. He stated that he wanted to sell the "little gun" for at least $45.00, but the police arrested him before he could sell it. The Defendant admitted that, if someone bought the gun, that person might shoot someone else with the gun.

Luvenia Anderson Willard, the Defendant's mother, testified that the Defendant lived with her and was attending Julia B. Hooks High School when he was arrested. She stated that, since being in jail, the Defendant was remorseful for burglarizing the homes. Willard testified that she believed that the Defendant could obey the law. She explained, "I asked him why he could be so stupid and hang around people that do things like that? Why he was so stupid to do the same thing they [were] doing?" She stated that the Defendant's accomplices in the burglaries were teenagers from her neighborhood. The trial judge then asked Willard what changes she had seen in the Defendant, and she replied, "He told me that he wanted a job, and would I get him a job . . . if he g[ot] out? And I told him I would get him a job where I work. . . ."

Following this proof, the trial court made the following ruling:

> [Defendant], it is a horrible, horrible crime to break into somebody's house, invade their castle, invade their place to live–And what was your reason? Well I wanted to have fun, I think, is the first time. And, then, as we got around to talk about it, well I wanted to get some money for nothing. There is no way to make these people whole again. You can pay for the door, you can pay for the property that was taken, but you can't make them–psychologically, you can't straighten them out ever.

> And you didn't do it just once. From what we know, we know that you did it at least twice. . . . Spreading these guns out on the streets, trying to sell them to criminals. Honest people are not going to buy them. And how frightening all that is. Absolutely frightening that is.

> [I]f you messed up your ability to get that wrestling scholarship, you messed it up. You know, it's just not a minor little thing that you got involved in, these two burglaries into somebody's house.

The trial court then denied the Defendant's application for judicial diversion, suspended his sentence for three years, placed him on probation for three years, and fined him $500.00. The trial court gave the following requirements for probation: "You must finish school; you must be employed; 10:00 p.m. curfew; . . . random drug screens; and moral recognition therapy."

## II. Analysis

The Defendant argues that the trial court abused its discretion in declining to impose a sentence pursuant to Tennessee Code Annotated § 40-35-313 (1997 & Supp. 2002), commonly referred to as "judicial diversion." According to this statute, the trial court may, at its discretion, following a determination of guilt, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A). A qualified defendant is one who:

> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) Is not seeking deferral of further proceedings for a sexual offense or a Class A or Class B felony; and
>
> (c) Has not previously been convicted of a felony or a Class A misdemeanor.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(i)(a), (b), (c).

When a defendant contends that the trial court committed error in refusing to grant judicial diversion, we must determine whether the trial court abused its discretion by denying the defendant's request for judicial diversion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997). Judicial diversion is similar to pretrial diversion; however, judicial diversion follows a determination of guilt, and the decision to grant judicial diversion is initiated by the trial court, not the prosecutor. State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). When a defendant challenges the trial court's denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. Cutshaw, 967 S.W.2d at 344; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). As this Court stated in Anderson:

> We conclude that judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under Tennessee Code Annotated § 40-15-105. Therefore, upon review, if "any substantial evidence to support the refusal" exists in the record, we will give the trial court the benefit of its discretion. Only an abuse of that discretion will allow us to overturn the trial court.

Anderson, 857 S.W.2d at 572 (citation omitted).

The criteria that the trial court must consider in determining whether a qualified defendant should be granted judicial diversion include the following: (1) the defendant's amenability to

correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) the deterrence value to the defendant and others. Cutshaw, 967 S.W.2d at 343-44; Parker, 932 S.W.2d at 958. An additional consideration is whether judicial diversion will serve the ends of justice, i.e., the interests of the public as well as the defendant. Cutshaw, 967 S.W.2d at 344; Parker, 932 S.W.2d at 958; State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by* State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). Moreover, the record must reflect that the court has weighed all of the factors in reaching its determination. Bonestel, 871 S.W.2d at 168 (citing State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989)). The court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. Id.

In the case under submission, there is no dispute that the Defendant qualifies for consideration for judicial diversion under Tennessee Code Annotated section 40-35-313 because he pled guilty to two counts of aggravated burglary, a Class C felony, and had not been previously convicted of a felony or a Class A misdemeanor. The Defendant complains that trial court abused its discretion by denying the Defendant's application for judicial diversion because the "trial judge did not indicate that he considered all the appropriate factors or why the factors he did consider outweighed all others."

In determining whether it should grant the Defendant's application for judicial diversion, the trial court did not explicitly articulate its consideration of the factors set forth in Cutshaw, 967 S.W.2d at 343-44. However, the record reflects that the trial court placed great emphasis on the serious nature of the offenses and the circumstances surrounding the offenses. The trial court stated that the Defendant's acts of burglarizing two houses and stealing items from the houses were "horrible" crimes. It further stated that the fact that the Defendant and his accomplices stole guns during one of the burglaries was "[a]bsolutely frightening" because they had planned "to sell them to criminals." The trial court also noted that the Defendant's motivation in participating in the two burglaries was to "have fun" and "get some money for nothing." It stated that "[t]here is no way to make these [victims] whole again . . . . psychologically, you can't straighten them out ever." These comments indicate that the trial court denied judicial diversion because of the troublesome nature of the burglaries in this case and a pattern of criminal behavior by the Defendant. The Defendant illegally entered the victims' houses along with his accomplices and stole firearms that he and his accomplices planned to sell on the street. Also, the Defendant committed aggravated burglary two times, which shows a disturbing pattern of criminal behavior. Moreover, the trial court's findings indicate that it believed that the denial of judicial diversion would serve the ends of justice, i.e., the interests of the public as well as the Defendant. After thoroughly reviewing the guilty plea proceeding and the sentencing hearing, we conclude that substantial evidence supports the trial court's decision. Accordingly, we hold that the trial court did not abuse its discretion in denying judicial diversion.

### III.  Conclusion

In accordance with the foregoing authorities and reasoning, we conclude that the trial court did not abuse its discretion in denying the Defendant's application for judicial diversion. Therefore, we AFFIRM the trial court's judgments.

_____

ROBERT W. WEDEMEYER, JUDGE