IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 28, 2009 Session

## STATE OF TENNESSEE v. CODY MATTHEW HEADRICK

**Appeal from the Criminal Court for Hamilton County**
**No. 260237     Rebecca J. Stern, Judge**

---

**No. E2008-02598-CCA-MR3-CD - Filed December 4, 2009**

---

The State appeals from the Hamilton County Criminal Court's decision to order the prosecution to grant pretrial diversion to the defendant, Cody Matthew Headrick, who was indicted for vehicular homicide. First, the State maintains that an appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure lies from the trial court's overruling the denial of diversion by the assistant district attorney general. In the alternative, the State requests that this court treat its improperly-filed Rule 3 appeal as an extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure. *See* Tenn. R. App. P. 3(c), 10(a). Second, the State argues that the trial court erred in reversing the assistant district attorney general's denial of pretrial diversion. Upon our review, we hold that the State's appeal does not present a proper Rule 3 appeal and that, although the case does meet the threshold of Rule 10 review, the order should be affirmed.

**Tenn. R. App. P. 3; Order Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., joined. D. KELLY THOMAS, JR., J., filed a separate opinion concurring in part and dissenting in part.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; William H. Cox, III, District Attorney General; and Jay Woods, Assistant District Attorney General, for the appellant, State of Tennessee.

Jerry H. Summers and Marya L. Schalk, Chattanooga, Tennessee, for the appellee, Cody Matthew Headrick.

## OPINION

*Introduction*

This case results from a November 18, 2005 automobile wreck where the defendant crashed his vehicle into a stationary vehicle at an intersection in Chattanooga, Tennessee. The wreck resulted in the injury of four people and the death of Hadrienne Mendonsa.

On August 16, 2006, a Hamilton County grand jury indicted the defendant for four counts of reckless aggravated assault, *see* T.C.A. § 39-13-102 (2003), one count of reckless endangerment, *see id.* § 39-13-103, and one count of reckless vehicular homicide, *see id.* § 39-13-213. The defendant requested pretrial diversion, and the assistant district attorney general ultimately denied the defendant's request by memorandum. The trial court considered the State's denial of pretrial diversion upon the defendant's petition for writ of certiorari, *see* T.C.A. § 40-15-105(b)(3), and determined that the prosecutor abused his discretion in denying pretrial diversion. The trial court granted the writ and ordered pretrial diversion. The State appeals from this order.

*Facts*

According to the assistant district attorney general's recitation of the facts of the case set forth in his memorandum denying pretrial diversion,[1] while a vehicle occupied by Hadrienne Mendonsa, Joshua Shupe, and Mark A. Stewart was stopped at an intersection, the defendant's vehicle approached at approximately 91 miles per hour. Dusty A. Lewis and Robert L. Reid were passengers in the defendant's vehicle. According to the prosecutor's memorandum, the defendant lost control of his vehicle on a "slight curve" in the road. The defendant's vehicle then sped off the road, slid on the sidewalk, struck a tree, and collided with the vehicle occupied by Ms. Mendonsa, Mr. Shupe, and Mr. Stewart.

As a result of the wreck, Mr. Lewis suffered head injuries, and Mr. Reid suffered a punctured lung and a spleen injury. Mr. Shupe and Mr. Stewart also suffered injuries, and the impact killed Ms. Mendonsa.

Later investigation of the accident showed that the defendant had no detectable intoxicants in his blood system at the time of the wreck. The Chattanooga Police Department reported that the "critical speed" of the road on which the defendant lost control of his vehicle was 80 miles per hour.

*Application for Pretrial Diversion*

The defendant's application for pretrial diversion revealed that he was born October 19, 1987. The defendant was unmarried with no children, and he graduated from Red Bank High School in 2006. The defendant lived with his parents in Signal Mountain, Tennessee, at the time of the wreck. The defendant's description of the event read as follows,

> I got off work. I am not quite sure when I got off. I went to Chris Campbell's apartment because that is where I picked up [D]usty and Robert. I vaguely remember going to the BP station, but that is where we went first. . . . I do not remember anything about the wreck. Two days after the wreck I went to see Dusty in the hospital. He was in the ICU. I remember walking in and looking at him and

---

[1]The defendant adopts these factual findings in his brief to this court.

I started to cry. . . [Kim Moss] told me Dusty was going to be okay and it could have been Dusty driving Robert and myself. After seeing one of my best friends that I hung out with every weekend in the hospital that day[,] I started having night mares [sic] and I had to start therapy. I could not sleep so the doctor started me on [R]em[e]ron. I went back to see Dusty when he was awake and his grandpa was there and he told [me] that it could have been the other way around and that they do not blame me. Them telling me this made me feel real good inside and it was the only thing that kept me going thr[ough] the whole or deal [sic]. Another time that I went to see Dusty he was in [S]iskin rehabilitation and we went for a walk. It made me feel real good seeing him up and about. That same day I ran into Robert and he told me that he knew it was an accident and that it could have been the other way around. Robert is . . . one person that I hung out with every weekend. He was Chris Campbell[’s] roommate.

The defendant also submitted records showing that he was employed at Sears at the time of the wreck.

The defendant also attached copies of his handwritten letters to the victims of the wreck. Although each letter was written separately by hand, we note that the letters were essentially "form letters." The letters expressed that the defendant was "very, very sorry . . . for the awful accident." Further the defendant wrote, "*I* lost control of the car which caused the accident, so I should have been the one to die." He wrote to the Mendonsa family that he "c[ouldn’t] begin to understand what [they] [we]re going through" and that he apologized "from the bottom of [his] heart" and "wish[ed] [he] could make it go away." He assured the victims that he was not drinking on the night of the accident.

The defendant submitted several reference letters with his application for pretrial diversion. Aline Summerlin, Chaplain for the Hospice of Chattanooga, wrote that she had known the defendant since he was in preschool and characterized the defendant as "a gentle, loving, sensitive person" who "has been part of a nurturing and caring family system through his life." Ms. Summerlin further described him as a leader who is "prompt, pleasant and polite at all times." She noted that the defendant lives in an area "where there are strongly enforced speed limits" and that she has "never known that [the defendant] has had any citations for speeding."

Kevin Emily, Head Wrestling Coach at Red Bank High School, wrote that he coached the defendant for four years and that the defendant was an "exemplary student-athlete." He described the defendant as a "very responsible young man" with a "positive attitude on life." He wrote, "[The defendant] is by far one of the greatest young adults that I have ever had the opportunity to come in contact with."

Mary Headrick, an aunt by marriage, wrote that the defendant had "a wonderful energy" and "strong character." She wrote that the defendant volunteered to help her and her

husband remodel their home when he was 14 or 15 years old. She characterized him as a "polite, respectable and promising young adult."

Dick Pierce wrote that he hired the defendant for general handyman work at his home from May to October 2006. He described the defendant as "honest and dependable," and he stated that he "believe[s] [the defendant] will continue to develop and mature into a good citizen of our county."

Kelly McCarry, CVS Pharmacy Store Manager, wrote that the defendant had been employed full-time at CVS Pharmacy since November 2007 and that the defendant "has proven to be an honest, hard working, flexible and dependable employee." She characterized the defendant as a "valuable asset to the company."

The defendant also attached medical records reflecting that he received psychiatric care resulting from the wreck. The records showed that the defendant was admitted to Parkridge Valley Hospital on July 30, 2008, due to depression and thoughts of suicide. The defendant required medication including Bentyl, Prozac, Remeron, Abilify, and Klonopin to cope with his depression. The defendant reported to his doctors that his fiancee had broken their engagement due to the stress of the pending court case and costs. He further reported that he believed "everyone [would] be better off" if he were dead and that he wished he would have died in the wreck. The defendant suffered flashbacks, nightmares, blackouts, and weight loss symptomatic of his depression.

The defendant also exhibited to his application for diversion a letter from Doctor Mark Jennings, who had treated the defendant since December 8, 2005. He wrote, "At that time he was having significant symptoms of Post Traumatic Stress Disorder as well as Major Depression. Over the past two and half [sic] years his symptoms have waxed and waned but now with court pending, he is having even more symptoms, including psychotic features." Doctor Jennings explained that the defendant "continues to express great remorse over the accident, believing he is the one who should have died" and that the defendant was continuing therapy.

*State's Denial*

The assistant district attorney general's memorandum denying pretrial diversion reflected that he had taken into consideration all the above information as well as discussions with the victims and their families. The letter explained that the Mendonsa family opposed diversion, even after receiving the defendant's handwritten letter. Further, the assistant district attorney general said, "Upon a thorough review [of] the handwritten letters, that the defendant simply wrote one letter and recopied that letter by hand three times becomes immediately apparent."

The assistant district attorney general found the defendant's character letters insufficient. The State noted that the application requested five non-family character witnesses but that one of the five letters submitted by the defendant was written by his aunt. Further, he noted that only one letter references the defendant's driving habits, which were the subject of his offense.

-4-

Regarding the defendant's psychiatric records, the assistant district attorney general stated that the stress and depression largely resulted not from his remorse but "equally consequent to the delay in these court proceedings, the cost of his defense, and his failed engagement, which defendant claims to also arise from his current criminal charges."

In denying pretrial diversion, the prosecutor maintained that the defendant operated his vehicle at an "egregious" rate of speed and that diversion would not serve the ends of justice. Further, it cited the National Safety Council's report that excessive speed was a contributing factor in 45 percent of fatalities from vehicle wrecks involving young people. He reasoned that diversion "would not have any deterrent effect on young drivers of Hamilton County." The assistant district attorney further maintained that the defendant failed to show amenability to correction. Noting that the defendant's initial application for diversion was incomplete and required supplementation, the prosecutor weighed the defendant's initial deficiencies against him in considering diversion. He further argued that simply suffering from mental conditions is not indicia of amenability. The State maintained that the defendant's "total contribution to society is minimal at best."

The assistant district attorney said, "Despite the overwhelming proof of the defendant's actions, he has yet to take responsibility for his actions. A diversion would overwhelmingly diminish the serious nature of the defendant's offense and the tragic death of Ms. Mendonsa." The prosecutor viewed diversion as "excessively lenient where the defendant's actions caused the death of a young woman." Lastly the assistant district attorney general noted that, although inapplicable to the current case, the Tennessee General Assembly amended our diversion statutes to "disqualif[y] Vehicular Homicide by Reckless Conduct from consideration for suspended prosecution by a Memorandum of Understanding." *See* 2007 Tenn. Pub. Acts ch. 471, § 3 (adding "Vehicular homicide, as described in § 39-13-213" as a crime ineligible for diversion). The State brought this to the trial court's attention "simply to note that the General Assembly has recognized the serious impact of Vehicular Homicide on [our] communities."[2]

### *Trial Court's Order*

The trial court, after considering all the proof, overruled the prosecutor's decision and ordered that the defendant be placed on pretrial diversion. The court viewed the defendant's medical history as suggestive of "genuine remorse that underlies his depression and anxiety." The trial court found that the prosecutor's doubt of the "genuineness of the defendant's remorse" was ill-reasoned in light of the defendant's statements to Doctor Jennings and the victims that "he should have been the one to die." The court posited, "Is not such an acknowledgment tantamount to an admission of responsibility for the accident?"

The court further found that "[t]he remaining reasons for the prosecutor's decision, the nature of the offense and a need for deterrence, are likewise problematic." The court explained, "Of the circumstances of the offense that the prosecutor regards as serious, the defendant's speed –

---

[2]The amendment to our diversion statute took effect on January 1, 2008, well after the November 2005 car wreck that is the basis of this case. *See* 2007 Tenn. Pub. Acts ch. 471, § 4.

ninety-one miles per hour on an off-interstate curve the critical speed of which is eighty miles per hour – and a victim's death, the latter is an element of the offense." The trial court reasoned that, because the Tennessee General Assembly had not listed vehicular homicide as a disqualifying offense for diversion at the time of the wreck, the prosecutor could not use only the fact that a victim died as grounds for denying diversion. Regarding the deterrent effect of diversion, the court noted that the General Assembly's decision to remove vehicular homicide as an offense eligible for diversion proved ample deterrent from future similar crimes.

The trial court also found that the prosecutor should not have given weight to the defendant's initial incomplete application in denying diversion. The court reasoned that such failures were clerical in nature and did not show any ill intent to conceal information from the prosecutor.

The court concluded, "That leaves only the degree of the defendant's recklessness as a basis for the prosecutor's decision. It is, however, improper to deny pre-trial diversion to an eligible defendant on the sole basis of the nature of an offense." On these grounds, the court held that the prosecutor abused his discretion in denying diversion.

*Issues on Appeal*

First, the State recognizes that it filed an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3(c) and argues that, although an appeal from a trial court's ordering pretrial diversion is not explicitly contemplated under Rule 3(c), such "appeals have been adjudicated under [Rule 3(c)]." The State next argues that, if this court determines that Rule 3 does not provide for an appeal as of right in this case, then we should consider the appeal pursuant to Tennessee Rule of Appellate Procedure 10. *See* Tenn. R. App. P. 10 (addressing extraordinary appeals). Lastly, the State argues that the assistant district attorney general did not abuse his discretion in denying pretrial diversion and that, therefore, the trial court erred in ordering pretrial diversion despite the State's objection.

We will first evaluate our jurisdiction to hear this appeal, which controls the remainder of our analysis.

*I. Rule 3*

The State argues that this court may consider a Rule 3 appeal from the trial court's ordering pretrial diversion and cites several cases supporting its argument. *See State v. Skidmore*, 15 S.W.3d 502, 506 (Tenn. Crim. App. 1999); *State v. Glen Andrew Adams*, No. E2007-01754-CCA-R3-CD, slip op. at 5 n.1 (Tenn. Crim. App, Knoxville, Aug. 8, 2008); *State v. Tony Galtelli*, No. W2006-00526-CCA-MR3-CD, slip op. at 7 n.4 (Tenn. Crim. App., Jackson, Feb. 13, 2008); *see also State v. Gordon McGee, Jr.*, No. M2007-01883-CCA-R3-CD (Tenn. Crim. App., Nashville, Sept. 12, 2008); *State v. Theresa Hallsford*, No. M2002-00959-CCA-R3-CD (Tenn. Crim. App., Knoxville, Dec. 20, 2002); *State v. Robbie Carriger*, No. E2000-00823-CCA-R3-CD (Tenn. Crim. App., Knoxville, Dec. 20, 2000). The defendant disagrees and maintains that no Rule 3 appeal lies from the order of pretrial diversion in this case.

First, we note that the State is correct in observing that this court has considered pursuant to Rule 3 a State's appeal of a trial court's ordering diversion. However, upon our review of the cases cited by the defendant, we notice that the issue of jurisdiction is rarely discussed. The only notable discussion of jurisdiction in any of the cases cited by the defendant appears in a footnote in *Tony Galtelli*, an unpublished case.[3] *Tony Galtelli*, slip op. at 7 n.4. In *Tony Galtelli*, this court permitted review under Rule 3 of the State's assertion "that the trial court improperly concluded that the district attorney general abused his discretion and improperly ordered the district attorney general to enter a memorandum of understanding placing [the defendant] on probation." *Id.*, slip op. at 4. However, the *Tony Galtelli* court explained that its determination to hear the appeal pursuant to Rule 3 resulted "[i]n view of the fact that this [c]ourt's order directed the State to proceed under Rule 3." *Id.*, slip op. at 4 n.4. We then explained "that a close reading of Rule 3(c), governing appeals by the State in criminal actions, does not explicitly provide for an appeal as of right from an order to grant diversion." *Id.*

Rule 3(c) provides that the State may appeal as of right in criminal actions "only from an order or judgment entered by a trial court . . . the substantive effect of which results in dismissing an indictment, information, or complaint." Tenn. R. App. P. 3(c)(1). The rule further provides an appeal as of right from a trial court's "setting aside a verdict of guilty and entering a judgment of acquittal," arresting judgment, granting probation or denying revocation of probation, and remanding a child to juvenile court. *Id.* 3(c)(2)-(4). Further, the State may appeal "from a final judgment in a habeas corpus, extradition, or post-conviction proceeding." *Id.* Nothing in Rule 3(c) provides an appeal from an order for pretrial diversion.

We acknowledge that this court has previously allowed the State a Rule 3(c) appeal from the trial court's ordering of pretrial diversion. *See State v. Kenneth Bryan Harris*, No. 01C01-9807-CR-00305, slip op. at 9 (Tenn. Crim. App., Nashville, June 4, 1999) ("When the trial court reversed the State's decision to deny pretrial diversion, this order effectively terminated prosecution of the case. We conclude that the State thereby had an appeal as of right from the judgment under Rule 3."), *modified*, 33 S.W.3d 767 (Tenn. 2000); *see also State v. Cameron*, No. E2006-00303-CCA-R3-CD, slip op. at 4 n.2 (Tenn. Crim. App., Knoxville, Sept. 5, 2006). However, during the same period, this court also heard State appeals from trial courts' ordering pretrial diversion as interlocutory appeals pursuant to Tennessee Rule of Appellate Procedure 9 and extraordinary appeals pursuant to Tennessee Rule of Appellate Procedure 10. *See, e.g.*, *State v. Brian A. Lowman*, No. E2007-02343-CCA-R10-CD (Tenn. Crim. App., Knoxville, Feb. 12, 2009); *State v. Charles H. Warfield, III*, No. M2007-02011-CCA-R9-CD (Tenn. Crim. App., Nashville, Sept. 18, 2008); *State*

---

[3]We also note that a footnote in *Glen Andrew Adams* notes that the defendant did not challenge the propriety of the Rule 3 appeal, but, "Even had the appeal under Rule 3 been improper, Tennessee courts have long recognized that we may 'transform an appeal improperly filed under Rule 3 of the Tennessee Rules of Appellate Procedure into a proper appeal under Rule 10 of the Tennessee Rules of Appellate Procedure." *Glen Andrew Adams*, slip op. at 5 n.1 (quoting *State v. Kenneth Bryan Harris*, No. 01C01-9807-CR-00305, slip op. at 9 n.2 (Tenn. Crim. App., Nashville, June 4, 1999), *modified*, 33 S.W.3d 767 (Tenn. 2000)). Although we agree that we may consider an improperly-filed Rule 3 appeal as a Rule 10 appeal, we disagree with the logic that transforming a Rule 3 appeal as of right to a Rule 10 extraordinary appeal does not alter our analysis. As we will discuss below, a Rule 10 appeal is only appropriate pursuant to limited, extraordinary circumstances.

*v. Gina Lola Smith*, No. M2006-02150-CCA-R9-CD (Tenn. Crim. App., Nashville, Apr. 4, 2007); *State v. Frank Ray Ruth*, No. E2006-01008-CCA-R10-CD (Tenn. Crim. App., Knoxville, Feb. 5, 2007); *State v. William Earl Cherry*, No. M2005-02327-CCA-R9-CO (Tenn. Crim. App., Nashville, July 26, 2006); *State v. Brian Russell Webb*, No. M2000-00743-CCA-R9-CD (Tenn. Crim. App., Nashville, Apr. 16, 2001).

Admittedly, this court has been inconsistent in its jurisdictional treatment of a State's appeal in pretrial diversion cases. However, our supreme court has recently commented on the treatment of Rule 3 appeals initiated by the State prior to dismissal of the charging instrument. In *State v. Meeks*, 262 S.W.3d 710 (Tenn. 2008), our supreme court examined the proper route for the State's appealing a trial court's granting a motion to suppress. The court acknowledged that "the courts and the litigants have been left to work through the application of [Tennessee Rules of Appellate Procedure] 3(c), 9, and 10 to orders granting an accused's motion to suppress or exclude evidence. The results have produced procedural confusion." *Id.* at 719.

In *Meeks*, the supreme court examined whether a trial court's order suppressing evidence creates a situation where the "substantive effect" of the order "results in dismissing an indictment, information, or complaint" pursuant to Rule 3(c)(1). *Id.* at 718-20. The supreme court then criticized this court's holdings in several cases "that [Rule 3] does not require an order dismissing the indictment, information, or complaint as a prerequisite to an appeal." *Id.* at 719. The high court reasoned,

> The Court of Criminal Appeals' interpretation of [Rule 3(c)(1)] misapprehends the plain language of the rule because it overlooks the word "results." The State may appeal as of right from an order suppressing or excluding evidence only when the substantive effect of that order "results" in the dismissal of the indictment, information, or complaint. When used as a verb, the word "result" means "[t]o arise as a consequence, effect, or conclusion from some action, process, etc." or "to end or conclude in a specified manner." 13 *Oxford English Dictionary* 761 (2d ed. 1989). Thus, to trigger [Rule 3(c)(1)], the order suppressing or excluding the evidence must produce the entry of an order dismissing an indictment, information, or complaint.

*Id.* at 719-20 (footnote omitted). Thus, our supreme court has made it clear that, in order to necessitate a Rule 3(c)(1) appeal, the dismissal of the case must have *actually resulted* from a trial court's order.

Applying this logic to a State appeal of a trial court's ordering pretrial diversion, we note that, although pretrial diversion presents an opportunity for a defendant's indictment to be dismissed ultimately, diversion by no means guarantees such dismissal. The statutory scheme governing pretrial diversion provides that "the prosecution will be suspended for a specified period." T.C.A. § 40-15-105(a)(1)(A). The trial court shall then dismiss the charges 90 days after the expiration of the period of suspension "provided, that no termination of the memorandum of

understanding has been filed." *Id.* § 40-15-105(e). Thus, we cannot say that such a "suspension" qualifies as an order that "results" in the dismissal of the case. By suspending the prosecution, a case is essentially continued for a period of time. Further, if a defendant does not comply with the conditions of his diversionary period, prosecution may resume. In light of our supreme court's guidance in *Meeks*, we must take a stricter approach to Rule 3 appeals, and it is clear that no Rule 3 appeal lies when the trial court orders the prosecutor to grant pretrial diversion.

Furthermore, we note that this court has consistently ruled that a Rule 3 appeal is not the appropriate manner in which a defendant should pursue an appeal of the merits of his case or a certified question after he has been granted judicial diversion. *See State v. Norris*, 47 S.W.3d 457, 462 (Tenn. Crim. App. 2000) (noting that "the guilty plea which results in an order of judicial diversion is not consummated into a judgment of conviction, unless the defendant breaches the conditions of his diversion/probation" and that a Rule 3 appeal is not available); *see also State v. Teddy Ray Mitchell*, No. E2007-02807-CCA-R3-CD (Tenn. Crim. App., Knoxville, Aug. 14, 2008); *State v. Christy Reynolds*, No. W2007-02142-CCA-R3-CD (Tenn. Crim. App., Jackson, Aug. 5, 2008).

In consideration of the foregoing analysis, we deny the State's Rule 3 appeal.

## II. Rule 10

In light of our decision that review pursuant to Rule 3(c) is inappropriate, we consider the State's alternative position that this court should review the appeal pursuant to Tennessee Rule of Appellate Procedure 10(a). *See* Tenn. R. App. P. 10(a) (allowing an extraordinary appeal on application and in the discretion of the appellate court). "[T]his court may treat an improperly filed Rule 3 appeal as a Rule 10 extraordinary appeal." *Norris*, 47 S.W.3d at 463 (citing *State v. Leath*, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998)). Rule 10 of the Tennessee Rules of Appellate Procedure provides that an extraordinary appeal may be sought "if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review or . . . if necessary for complete determination of the action on appeal." Tenn. R. App. P. 10(a). Before an extraordinary appeal will be granted, the party appealing must establish that: (a) "the ruling of the court below represents a fundamental illegality," (b) "the ruling constitutes a failure to proceed according to the essential requirements of the law," (c) "the ruling is tantamount to the denial of either party of a day in court," (d) "the action of the trial judge was without legal authority," (e) "the action of the trial judge constituted a plain and palpable abuse of discretion," or (f) "either party has lost a right or interest that may never be recaptured." *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980) (finding that the principles required for the common law writ of certiorari are applicable to applications for extraordinary appeal under Rule 10).

Citing *State v. Johnson*, 569 S.W.2d 808 (Tenn. 1978), the State argues that a Rule 10 appeal is necessary because "the State will otherwise 'lose a right or interest that may never be recaptured'" and because "the trial court departed from the accepted and usual course of judicial proceedings." Citing *State v. Curry*, 988 S.W.2d 153, 157-58 (Tenn. 1999), the State argues that "[i]n reviewing the prosecutor's decision denying pretrial diversion, the trial court must consider only the evidence considered by the district attorney general and conduct a hearing only to resolve

-9-

factual disputes concerning the application." The State maintains that the trial court "erroneously concluded that, by eliminating remorse and deterrence, only the degree of recklessness was left as a basis for the prosecutor's decision, and as such, it was improper to deny pretrial diversion on the sole basis of the nature of the offense." The State further argues that, "[i]n so doing, the trial court reweighed the evidence and substituted its judgment for that of the district attorney general, contrary to the usual and accepted course of reviewing a prosecutor's decision in denying pretrial diversion."

To address whether the trial court's actions necessitate an extraordinary appeal, we must first review the pretrial diversion procedure. The State admits that the defendant was statutorily eligible for pretrial diversion, *see* T.C.A. § 40-15-105(a)(1)(B)(i)(a)-(c) (2003); however, "[a] person who is statutorily eligible for pretrial diversion is not presumptively entitled to diversion." *State v. Yancey*, 69 S.W.3d 553, 557 (Tenn. 2002) (citing *Curry*, 988 S.W.2d at 157). The decision whether to grant pretrial diversion rests within the discretion of the district attorney general. *See* T.C.A. § 40-15-105(b)(3); *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). The process of applying for, adjudicating, and reviewing pretrial diversion is attended by formulaic rules.

The burden is upon the defendant, "in the first instance, to provide the prosecuting attorney with sufficient background information and data to enable that officer to make a reasoned decision to grant or deny the relief sought." *State v. Herron*, 767 S.W.2d 151, 156 (Tenn. 1989), *overruled in part by State v. Yancey*, 69 S.W.3d 553, 559 (Tenn. 2002). To carry the burden, an applicant should provide the prosecutor with "as complete an application as circumstances warrant." *State v. Winsett*, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993).

Even though the defendant has the burden to demonstrate his eligibility and suitability for pretrial diversion, the prosecutor has specific obligations, especially when he or she denies the application. *Curry*, 988 S.W.2d at 157. Our appellate courts have forged the following guidelines for prosecutors' use when considering applications for pretrial diversion:

> (1) The prosecutor should focus on the defendant's amenability to correction. *Id.* at 156.
>
> (2) The prosecutor must consider (a) the circumstances of the offense, (b) the defendant's criminal record, (c) the defendant's social history, (d) the physical and mental condition of the defendant where appropriate, and (e) the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the defendant. *Id.*; *Hammersley*, 650 S.W.2d at 355.
>
> (3) "[T]he circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if [(a)] all of the relevant factors have been considered as well," *Curry*, 988 S.W.2d at 158, and (b) only when the circumstances are of such overwhelming significance that they necessarily outweigh all other factors, *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993).

(4) Although this court has affirmed the denial of pretrial diversion where the failure to admit the crime and/or express remorse revealed that the defendant had been less than truthful with the court, *see, e.g.*, *State v. Karen Sue Kelsey*, No. 03C01-9603-CC-00117, slip op. at 7 (Tenn. Crim. App., Knoxville, Oct. 29, 1997), *perm. app. denied* (Tenn. 1998), remorse per se is not a factor in determining suitability for pretrial diversion, *see State v. Stoney Gene Golden*, No. 88-146-III, slip op. at 3 (Tenn. Crim. App., Nashville, Apr. 12, 1989), *perm. app. denied* (Tenn. 1989), and the failure of the defendant to admit guilt is not, in and of itself, a proper basis for denying diversion, *see, e.g.*, *State v. Dewey L. Clark*, No. 03C01-9706-CR-00227, slip op. at 7 (Tenn. Crim. App., Knoxville, July 16, 1998).

(5) A denial of the application (a) must be in writing and (b) must contain not only an enumeration of the evidence the prosecutor considered but also a discussion of the weight given to each factor, *State v. Pinkham*, 955 S.W.2d 956, 960 (Tenn. 1997); *see Curry*, 988 S.W.2d at 157 (explaining the importance of a detailed, written denial), and of why unfavorable factors outweigh favorable ones, *Herron*, 767 S.W.2d at 156.

(6) "In addition to the foregoing items which the prosecutor should include in a written record, he or she should also identify 'any factual disputes between the evidence relied upon and the petitioner's application.'" *State v. Lane*, 56 S.W.3d 20, 25 (Tenn. Crim. App. 2000) (quoting *Pinkham*, 955 S.W.2d at 960).

If the application is denied, the defendant may seek a writ of certiorari in the trial court. T.C.A. § 40-15-105(b)(3). The Code and the appellate courts have prescribed the procedure for the defendant to follow:

(1) The compiled record should be attached to the petition. *Winsett*, 882 S.W.2d at 810.

(2) In the petition, the defendant should identify any disputed facts which the prosecutor has not identified. *Lane*, 56 S.W.3d at 26.

(3) The defendant has the burden of proving that the district attorney abused his or her discretion in denying diversion, *State v. Watkins*, 607 S.W.2d 486, 488 (Tenn. Crim. App. 1980), a process that may entail showing an absence of any substantial evidence in the record to support the prosecutor's denial of pretrial diversion, *Lane*, 56 S.W.3d at 26.

Upon receiving a petition for certiorari filed by an aggrieved applicant for pretrial diversion, the trial

court must then follow a prescribed procedure:

> (1) The trial court limits its consideration to the evidence which was before the prosecutor and to the reasons given by the prosecutor in denying diversion. *State v. Brown*, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985).

> (2) The trial court may conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant; the court may not hear additional evidence. *Curry*, 988 S.W.2d at 157-58.

> (3) The trial court must also adhere to the same case-by-case balancing procedure that is imposed upon the prosecutor. *Herron*, 767 S.W.2d at 156.

> (4) The trial court must state its findings in writing. *Id.* If the trial court declines to reverse the prosecutor's denial of diversion, the defendant may seek interlocutory review. *See generally* Tenn. R. App. P. 9, 10; Tenn. R. Crim. P. 38. If review is granted by this court, our review is confined to determining whether the trial court's determination is supported by a preponderance of the evidence. *Curry*, 988 S.W.2d at 158.

Many Rule 10 applications in cases such as the present case may well be denied; the State would be slogging uphill to demonstrate that a Rule 10 denial would result in its losing a right or interest that it may never recapture when, as in the present case, the State did not seek relief in the form of a Rule 9 appeal. Generally, we believe that the bases for Rule 9 review are more apt for review of the present case than are the bases for Rule 10 review. *Compare* Tenn. R. App. P. 9 (suggesting nonexclusive bases for granting interlocutory appeal, including "the need to develop a uniform body of law . . . and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment") *with* Tenn. R. App. P. 10 (conditioning the grant of an interlocutory appeal upon either (1) the lower court's departure "from the accepted and usual course of judicial proceedings [to be significant enough] as to require immediate review" or (2) a necessity "for complete determination of the action on appeal"). In the present case, however, this court has made a first-impression application of our supreme court's 2008 opinion in *Meeks* to bar the State from a rightful, Rule 3 appeal in a case involving the ordering of pretrial diversion. Thus, even though the State did not seek Rule 9 review in the present case, we believe that the situation justifies leniency in at least granting Rule 10 review. We therefore hold that Rule 10 review is granted.

Upon that review, however, we discern that the trial court held that the prosecutor's only legitimate grounds of denying pretrial diversion was the nature of the particular offense itself – vehicular homicide. The record and the law supports this holding. *See State v. Thompson*, 189 S.W.3d 260, 268 (Tenn. Crim. App. 2005) ("[O]ur supreme court has indicated that it is improper

to deny pretrial diversion to an eligible defendant solely because he . . . is charged with a particular offense.") (citing *Hammersley*, 650 S.W.2d at 356).

Thus, it appears that even though Rule 10 extraordinary review is granted, the trial court reasonably followed the proper procedures to evaluate the record and determine that the prosecutor had abused his discretion in denying diversion. As such, we affirm the order of the trial court.

*Conclusion*

We hold that the State has no Rule 3 appeal from the trial court's order granting pretrial diversion. After analysis, we hold that this case does merit Rule 10 review, but upon that review, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE