**STATE of Tennessee, Appellant,**

v.

**Tonya L. HERRON, Appellee.**

Supreme Court of Tennessee,
at Nashville.

Feb. 27, 1989.

W.J. Michael Cody, Atty. Gen. & Reporter and Charles E. Bush, Asst. Atty. Gen., Nashville, for appellant.

Michael W. Edwards, Buchanan, Edwards & Detring, Hendersonville, for appellee.

Jack E. Seaman, Lyell, Eades, Seaman & Shelton, Paul J. Morrow, Jr., and Kenneth J. Ries, Nashville, for amicus curiae.

## OPINION

O'BRIEN, Justice.

The State has appealed the judgment of the Court of Criminal Appeals reversing the trial court's judgment affirming denial of pretrial diversion by the District Attorney General of Sumner County.

On 11 April 1986 a two-count presentment was returned against defendant charging larceny by trick of $5,000 from Allied Corporation and $6,000 from Commerce Union Bank. Subsequently a written request was made to the District Attorney General requesting pretrial diversion. This request was denied setting forth the following reasons:

(1) The two offenses with which Tonya Herron is charged were committed by means of a carefully contrived, deliberate scheme. Tonya Herron obviously devoted quite a bit of planning toward formulating the scheme.

(2) This criminal venture was not one of impulse since it was committed on or about February 19, 1986 and eight days later, on or about February 27, 1986, resulting in a total loss of $11,000.00. This money was apparently used to fund a rather extravagant lifestyle.

(3) Tonya Herron threw a cloud of suspicion on an innocent party, Gayle Evans Crowder, by using Ms. Crowder's post office box number on the "T & B Services" checks without Ms. Crowder's knowledge or consent. This initially caused my office and the T.B.I. to treat Ms. Crowder as a suspect in this scheme.

(4) Fraudulent, "white-collar" crimes of this nature are a serious problem in Sumner County, as we nearly always have these type crimes to present to the Sumner County Grand Jury each session it meets. I feel that the deterrent effect of arrest and prosecution would be negated by placing Tonya Herron on pre-trial diversion in this case.

At the conclusion of a hearing on a petition for writ of certiorari in the Circuit Court the trial judge made a finding which included the following pertinent facts:

(1) The strongest factors in favor of the defendant was the attitude of each person who was defrauded.

(2) The sums of money involved were important because it made restitution so difficult.

(3) The fraudulent actions took place on two separate occasions and efforts were made to cover up the wrongful actions.

(4) The money was used for various and sundry purposes, none of which were really necessary to defendant.

(5) The failure to make restitution was a strong factor in his refusal to grant diversion.

(6) The foregoing factors plus the matter of deterrence were reasons to find that the Attorney General had not abused his discretion.

At a hearing on a motion to reconsider the trial court reiterated his finding that defendant was earning approximately $800 a month and could have made some effort at restitution. He further commented that there was a third party who was implicated very seriously as the result of defendant's actions.

In the order denying the petition for certiorari the entire statement of the trial court on the issue is contained in the following paragraph:

Based on the circumstances of the offense, i.e., the amount of money alleged to have been taken ($11,000), the fact that the defendant wrote checks on the stolen money for items which she did not have to have, and the fact that the idea of restitution was totally abandoned, the court finds that the District Attorney General did not abuse his discretion in denying pre-trial diversion.

The opinion of the Court of Criminal Appeals sets out the following pertinent evidence which was offered at the certiorari hearing in the trial court: At the time of the offense, the defendant was a 24–year-old female with a high school education and lacked three (3) hours to qualify for an Associates Degree in Accounting and Computer Science from Volunteer State Community College. She was raised by a stepfather after her own father's death when she was a very young child. She has four brothers and two sisters. All adult members of the family are employed, although the family does not appear to be affluent. Defendant has had regular employment since she was 19 years of age. She has always attended church regularly. She was married on 28 September 1985 to a young man with whom she had been dating about six (6) years. On their honeymoon her husband falsely accused her of infidelity and, immediately after their marriage, he placed a tape recording device on their telephone. The marriage lasted only a few weeks. The husband had also victimized her financially during the years of their courtship. At the time this offense was committed, she held herself in very low esteem and was motivated in commission of the offense to prove that she could "make it" without her husband.

The record is clear that the crimes were completely out of character for her. Through her attorney, she voluntarily told her employer of her illicit activity before her guilt was discovered. She was regretful and remorseful. Approximately a month or six weeks after she was terminated by Allied Corporation she found new employment with a mortgage loan company as a cashier and loan processor, handling about $750,000 per month. She informed her new employer of her prior difficulties before she was employed although she did not tell him the exact amount of money involved. He learned this fact from her attorney approximately a week later. This employer was well satisfied with her work and intended to retain her unless pre-trial diversion was denied. If diversion was denied she could not be bonded and would be ineligible to continue her employment.

Her take home pay was $385 every two weeks. A representative of Allied Corporation testified that defendant was hired in November 1985 and up until this occurrence, she was "very highly regarded and was doing a very good job."

She was employed in the Accounts Payable Department by Allied where she was responsible for the payment of invoices. In committing these offenses she placed a fictitious code into the computer for "T & B Services" a fictitious company. She gave a fictitious post office box number for T & B Services which happened to be the post office box of Gayle Evans Crowder. The proceeds of both checks made out to T & B Services was ultimately deposited in defendant's bank account. Allied Corporation lost the $5,000 check and stopped payment on the $6,000 check. Commerce Union Bank honored the $6,000 check although payment had been stopped, therefore becoming liable for the loss on that check.

The Court of Criminal Appeals found that the record did not support the District Attorney's expressed opinion that defendant used the money expropriated to finance an extravagant life-style. She purchased $2,000 worth of furniture and bought a VCR for $600. Some of the money went to pay bills owed by her and her family. At the time of the hearing she was living with a sister, rent free.

They found the record did not support the Attorney General's opinion that the defendant intentionally caused Gayle Evans Crowder to be suspected of the crime. The only evidence in the record was that Mrs. Crowder was not known to the defendant and it was a mere coincidence that the post office box number she gave for T & B Services was the post office box number of Mrs. Crowder.

They found that while deterrence was an appropriate factor for consideration, this factor is to be weighed against other considerations in deciding the ultimate question; that is, whether diversion will benefit both the defendant and the public.

In finding that the Attorney General did not abuse his discretion they noted that the trial judge expressed considerable concern that restitution had not been made. This factor was not considered by the District Attorney General.

They found that the defendant's family made an effort to raise the money to make restitution but was unable to do so and abandoned their efforts after the defendant was indicted.

They reversed the judgment of the trial court affirming the action of the District Attorney General in denying diversion. The case was remanded for a memorandum of understanding.

In the first issue the State questions the action of the Court of Criminal Appeals in reversing the trial court and directing diversion. It is argued that the prosecutor did not abuse his discretion in denying pretrial diversion.

The intermediate court examined each of the four reasons relied on by the District Attorney General to deny the application for diversion. In reference to the first it found that while every criminal act may be characterized as deliberate and to require some planning, the acts committed by defendant were not well thought out. We are inclined to agree. The evidence demonstrates very little more than that defendant committed this offense while she was in the throes of a very traumatic marital situation. She stated she committed the offense because she felt if she had the money she could prove to her husband that she could make it without him. She expressed her shame for what she did and her willingness to do whatever it took to clear up the matter and to make restitution. Her testimony on cross-examination was that she went to her attorney and told him what she had done because she "just couldn't live with it anymore." The same is true as to the spontaneity of the act. She explained in court that the scheme was accomplished by preparing two separate invoices to T & B Services and entering them into the computer for payment. The first check "was kicked out" almost immediately but the second one did not appear until the following week. The checks were not cut on the same day and were deposited in her own account by her when she obtained possession of them. There is nothing to indicate the money was used to fund an extravagant life-style. The Court of Criminal Appeals found that she had purchased furniture for $2,000 and a VCR which cost approximately $600. Actually the balance of the money, except for $1,000 which had not been spent, went to pay family obligations, including her own, and rent for a new apartment she had taken. There is no evidence at all in the record that the defendant intended to throw a cloud of suspicion on an innocent party. Ms. Gayle Crowder became a suspect through the TBI investigation quite by accident so far as this record shows. Her innocence was quickly established. The appellate court agreed that deterrence was an appropriate factor for the Attorney General to consider, but found, correctly, that it was to be weighed against other considerations in deciding the ultimate question; that is, whether diversion would benefit both the defendant and the public.

The record further indicates that the trial judge only considered two of the factors relied on by the District Attorney General. He noted in passing that defendant had taken a large sum of money which she used for various and sundry purposes, none of which were really necessary to her. He stressed almost exclusively her failure to make restitution. This was confirmed by his order denying diversion. He considered the circumstances of the offense to be the amount of money taken. We find in a motion to reconsider submitted by defense counsel there was an offer of proof that arrangements had been made through defendant's new employer to pay all of the money to the victims within thirty (30) days if diversion was granted. The trial judge declined to hear the evidence.

In *State v. Hammersley*, 650 S.W.2d 352 (Tenn.1983), this Court, noting the divergence of opinion existing within the Court of Criminal Appeals in pretrial diversion matters, endeavored to establish some objective standards to assist prosecutors to

properly exercise the discretion vested in them in dealing with the subject. In referring to the circumstances of the offense the Court, at page 355, emphasized the following:

"When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant. (Citations omitted)." (Underlining ours).

On the subject of deterrence the Court stated at page 354, "In our opinion deterrence should be considered in pretrial diversion cases in the same manner as we have approved for consideration in probation cases." Citing from *State v. Michael*, 629 S.W.2d 13 (Tenn.1982), the Court reiterated:

"In making the point that some deterrence is present in every case we did not intend to say that the factor of deterrence has exactly the same weight in every case. An element of deterrence is present in every case but the degree of significance of this factor in restraining the offender or curbing the propensity for criminal activity in others varies widely with the class of offense and the facts of each case."

The State argues that in this case it is obvious the prosecution of the defendant would have a substantial deterrent effect upon her former co-workers at Allied Automotive. But the fact is that either diversion or trial have been pending nearly three

(3) years since the presentment in this case and there is no evidence that defendant's former co-workers have attempted to engage in any similar act. In *State v. Markham*, 755 S.W.2d 850, 853 (Tenn.Cr.App. 1988), the court, in holding that the evidence did not preponderate against the trial court's finding that denial of diversion constituted abuse of discretion, stated what we consider to be the correct view of the law on the subject:

"The cases cited by the State affirm that the circumstances of the crime and the need for deterrence may be of such overwhelming significance that they outweigh all other factors. However, those cases do not hold that the district attorney general may disregard other relevant factors and consider only the circumstances of the crime and need for deterrence. An applicant may present and the district attorney general must consider evidence which tends to show that the applicant is amenable to correction and is not likely to commit further criminal acts."

In his letter to the Attorney General requesting pretrial diversion in this case defense counsel did a yeoman's job in setting out that defendant did not have any criminal record, her social history, her physical and mental condition, including her educational background, her employment history as well as the stability and continued support of her family. A pretrial diversion report was also filed which substantially affirmed the information provided in the application.

Neither the District Attorney General nor the trial judge gave due consideration to these elements in reaching their decision. We are of the opinion this case should be remanded to the trial court for reconsideration and if nothing further adverse to the appellee's eligibility for pretrial diversion is discovered the application should be granted.

This Court approved the submission of an Amicus Curiae brief by the Amicus Committee of the Tennessee Association of Criminal Defense Lawyers (TACDL) who have expressed an interest in having the

Court set standards for review of cases involving denial of diversion by appellate courts; the issue of deterrence as a factor in denying diversion; and for the authority of the trial judge to affirm a denial of diversion upon considerations not advanced by the District Attorney.

We have spoken at length on the issue of deterrence in *Hammersley,* supra, and in this opinion. Curiously, in the six (6) years since the publication of *Hammersley,* it seems to have been cited by the intermediate courts only seven (7) times in published cases and followed only once, in the *Markham* case, supra. Application to the guidelines we have established in these cases and the citations they include should set adequate standards if they are observed.

The statute governing pretrial diversion was enacted by the General Assembly in 1975. A study of the legislative history indicates the goals sought to be reached through the legislation included the establishment of a uniform statewide system to effect pretrial diversion of first time offenders or those without prior convictions within the preceding five (5) years.

The program was designed to allow local district attorneys broad discretion in deciding which offenders would be eligible for this preferred treatment. It was felt that society would be better served if certain offenders were placed on diversion as opposed to imprisonment.

In the enactment the legislature laid down no criteria for eligibility beyond that set out in the first paragraph of T.C.A. § 40–15–105. In *Hammersley,* supra, this Court established certain objective standards for the guidance of prosecutors and the trial courts in carrying out the functions delegated to them by the diversion statute.

■ However, the process is initiated with the defendant who desires to be considered for diversion. The burden is upon him, in the first instance, to provide the prosecuting attorney with sufficient background information and data to enable that officer to make a reasoned decision to grant or deny the relief sought. Of course this information may be supplemented by the pretrial investigation authorized by T.C.A. § 40–15–104, but the investigation does not lessen the obligation of an applicant to endeavor to show beforehand he is an appropriate subject for diversion.

■ If the decision is made to grant the application the factors upon which that determination is made should be included in the memorandum of understanding for the benefit of the trial judge who must approve it, to provide a basis for his decision.

■ If the application is denied, the factors upon which the denial is based must be clearly articulable and stated in the record in order that meaningful appellate review may be had. *Hammersley,* supra, p. 355. This requirement entails more than an abstract statement in the record that the district attorney general has considered these factors. He must articulate why he believes a defendant in a particular case does not meet the test. If the attorney general bases his decision on less than the full complement of factors enumerated in this opinion he must, for the record, state why he considers that those he relies on outweigh the others submitted for his consideration.

The trial judge must also adhere to the same balancing procedure, which must be followed on a case-by-case basis, assigning due significance to all relevant factors, and set out in findings of fact and/or his order affirming or reversing the prosecutors decision. It is only thus that meaningful appellate review may be had and the likelihood sustained that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

The case is remanded to the trial court for further proceedings in accordance with this opinion. The costs of this appeal are assessed against the State.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.