# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 11, 2011 Session

## STATE OF TENNESSEE v. JESSE GRANT CRAVEN, TOMMY DAVENPORT & GREG POPE

**Direct Appeal from the Circuit Court for Warren County**
**No. F-12055     E. Shayne Sexton, Judge**

---

**No. M2010-00516-CCA-R9-CO - Filed May 27, 2011**

---

In this interlocutory appeal, the Appellants, Jesse Grant Craven, Tommy Davenport, and Greg Pope, appeal the Warren County Circuit Court's order denying them relief from the prosecutor's denial of each of their respective applications for pretrial diversion. After a thorough review of the record and relevant authorities, we conclude that the trial court properly affirmed the prosecutor's denial of pretrial diversion. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

John G. Mitchell, III, Woodbury, Tennessee, for the Appellant Jesse Grant Craven.

James Bryan Lewis and James Robin McKinney, Nashville, Tennessee, for the Appellant Greg Pope.

Edward H. North, Manchester, Tennessee, for the Appellant Tommy Davenport.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Lisa Zavogiannis, District Attorney General, Tomas J. Miner, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a traffic incident wherein a driver hit and killed a child walking

toward her Warren County school bus, whose flashing warning lights and stop sign were not operating properly. Each of the three Defendants herein was an employee of the Warren County Board of Education School Bus Garage and was involved in repairing the warning system on the school bus after the fatal accident. Based on each Defendant's failure to disclose these repairs to police, each was indicted on charges of tampering with evidence. Defendants Craven and Pope were additionally charged with making a false report to law enforcement personnel. Each Defendant filed an application for pre-trial diversion, which the State denied. Each Defendant filed a petition for a writ of certiorari appealing the State's denial of their application for pretrial diversion.

At the consolidated hearing on the Defendants' petitions for writs of certiorai, the following occurred: The parties agreed that little dispute existed about the facts in the case, and they agreed that those facts were adequately summarized by the State in its denial of the Defendants' applications for pretrial diversion. The State filed three separate denials, one for each respective defendant, and we summarize the facts presented in those denials as follows:

Defendant Pope was employed as a mechanic at the Warren County Board of Education School Bus Garage. On the morning of April 23, 2009, Barbara Nunley, a bus driver who was running her normal morning route picking up children for delivery to school, radioed to the bus garage and advised Defendant Craven, who was the shop foreman and Defendant Pope's supervisor, that she was having problems with the warning system that is supposed operate when children are boarding the school bus. This system consists of a series of flashing overhead lights and a stop sign located on the driver's side of the bus that deploys and has flashing lights on it. The driver had noted that it was not functioning properly. After Ms. Nunley discussed the situation with Defendant Craven, she continued on her route with the understanding that she would bring the bus to the garage after dropping the children off at their respective schools.

Each of the Warren County school buses is equipped with a radio that the bus driver can use to communicate with the bus garage and with other bus drivers. The buses are also equipped with video surveillance cameras and a video and audio recording is made of the activity in the interior of the bus while the bus is operating. The video from Nunley's bus on April 23, 2009, confirmed that she called Defendant Craven and reported,"[M]y stop sign is off and the overhead lights are not working this morning." The recording further showed that Nunley advised Defendant Craven that, after she completed her morning route, she intended to park the bus outside the school cafeteria where she worked during the day. She asked Craven pick up the bus from the cafeteria and repair it. Defendant Craven advised Nunley that he would pick up the bus and that she should "watch out" during the remainder of her morning route.

Before the driver completed her morning bus route, an elementary school student who was crossing the road to board the bus was struck by an oncoming car and fatally injured. The bus's warning light system was not operating when this accident occurred. Immediately after the accident occurred, Nunley called over her radio frantically that she needed help and needed someone to call 911 because a child had been hit. She added that her stop sign and flashers were not operating at the time. Defendant Davenport, a mechanic who was present and working at the bus garage at the time, denied that he heard Nunley report an accident or that her flashers and stop sign were not working. He admitted that he heard "hysterical screaming" over the radio after which Defendant Craven told him that he was leaving the garage to check on Nunley's bus.

Upon learning of the accident, Defendants Pope and Craven traveled to the location of the accident in a vehicle assigned to the bus garage to assist with issues related to the school bus being involved in an accident. Upon arrival at the accident site, they were advised by a law enforcement officer working traffic control that there was no school bus at the scene. While Defendants Pope and Craven were gone, there were continuous radio calls between Nunley and the bus garage about how best to proceed with the children still aboard her bus. Defendant Davenport, who was present during these calls, denied any knowledge of the accident. Defendants Pope and Craven then returned to the bus maintenance garage where they were advised that, upon arrival of the bus, the video tape from the bus's onboard camera was to be removed from the bus and taken to the maintenance garage office, and the bus was to be secured.

Before troopers with the Tennessee Highway Patrol arrived, Defendant Pope boarded the bus, removed the video tape from the bus's camera system, and later turned it in at the maintenance office as he had been instructed to do. Defendant Pope also assisted another school system mechanic, Defendant Davenport, examine the bus's boarding warning system, which consisted of flashing overhead lights and a stop sign. The pair replaced a defective fuse in the warning system. Defendant Davenport maintained that he did not know that the bus had been involved in an accident while he was replacing the fuse and that he did not know what type of problem the bus was having when he repaired the fuse. He said he just happened to be helping Defendant Pope on this bus when he observed Defendant Pope pull the bus into the garage.

A Tennessee Highway Patrol Trooper later arrived at the bus maintenance garage to inspect the bus, including the warning light system that operates when the bus is being boarded. Neither Defendant Pope nor Defendant Craven, who were both present, advised the trooper that the lights had not been working properly. The two men also failed to disclose to the trooper that they had replaced a defective fuse in the warning system. Both, in fact, watched as the trooper videotaped the lights functioning properly. The trooper therefore

believed that the lighting system had been properly functioning at the time the accident occurred.

During the afternoon of April 23, 2009, Defendant Pope came to the District Attorney's office in Warren County where he was questioned about his involvement with this bus on this date by persons who identified themselves as law enforcement officers. The officers advised Defendant Pope that he would not be in trouble if he had repaired the lights, insisting they only needed to know whether the lights had been repaired. In response, Defendant Pope stated he had checked the lights on the bus and that they were working.

When Defendant Craven was questioned by the district attorney's office, he repeatedly denied that he had any knowledge of anyone working on the bus before the trooper arrived. He later admitted, however, that he had seen one of his mechanics at the access door and one on the bus before the trooper arrived.

Based upon these facts and after reviewing each Defendant's application for pre-trial diversion, the District Attorney General denied each of the Defendants' applications. The Defendants filed petitions for writs of certiorari to the trial court, arguing that they each met all the statutory criteria for pre-trial diversion and that the District Attorney General had abused her discretion when she denied the applications. The trial court held a hearing on the petitions, wherein the Defendants were given the opportunity to present evidence. Defendant Pope presented evidence in the form of multiple letters supporting his petition. He admitted that the had been convicted of DUI, third offense, fifteen years ago, but said that he had rehabilitated himself, as evidenced by the letters. The trial court reviewed this evidence, and then it held "as to [D]efendant Pope, there is no abuse of discretion in the District Attorney['s] not entering into a pretrial diversion with Mr. Pope."

Defendant Davenport then offered the testimony of multiple witnesses who testified that Defendant Davenport was a "good citizen" and had supported his children through school. The witnesses said that they had never known him to be in any trouble and recounted that he was, by all accounts, a good friend. These witnesses each testified that they had not been contacted by the District Attorney's office about Defendant Davenport. The trial court then held that "based on the facts of this case, . . . [the State] did not abuse its discretion" when it denied Defendant Davenport judicial diversion. It went on to state, "[T]his was public property used in the commission of a homicide . . . but then other members of the public body have been accused of participating in a cover-up and in that sense I think the State is entitled to use the public perception as a factor for their denial."

With regard to Defendant Craven, the trial court reminded the parties that his standard of review was whether the State abused its discretion when it denied Defendant Craven's

application for pretrial diversion. Based upon the trial court's review of the State's written denial, the letters provided on Defendant Craven's behalf, and the arguments of the parties, the trial court found the State had not abused its discretion in refusing to grant Defendant Craven pretrial diversion.

The trial court did not file a written order memorializing the findings that it made during the hearing. The three Defendants asked the trial court for permission to seek an interlocutory appeal, and the trial court granted the Defendants an interlocutory appeal to this Court pursuant to Tennessee Rule of Appellate Procedure 9. This Court granted the appeal on April 20, 2010.

## II. Analysis

On appeal, each of the three Defendants contends that the trial court erred when it denied his respective petition for a writ of certiorari. The arguments presented by each Defendant will be discussed thoroughly below.

To be eligible for pretrial diversion, an applicant must not have been previously granted pretrial or judicial diversion; must not have a prior misdemeanor conviction in which he or she served a sentence of confinement or a prior felony conviction within a five-year period after completing the sentence or probationary period for the prior conviction; and must not be seeking diversion for a Class A or B felony, certain sexual offenses, driving under the influence, or vehicular assault. T.C.A. § 40-15-105(B)(i)(a)-(c) (2006). Based upon the record before us, the Defendants are eligible for pretrial diversion. However, we note that "[a] person who is statutorily eligible for pretrial diversion is not presumptively entitled to diversion." *State v. Yancey*, 69 S.W.3d 553, 557 (Tenn. 2002).

The decision whether to grant pretrial diversion rests within the discretion of the district attorney general. *See* T.C.A. § 40-15-105(b)(3); *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn. 1983). The burden is upon the applicant, "in the first instance, to provide the prosecuting attorney with sufficient background information and data to enable that officer to make a reasoned decision to grant or deny the relief sought." *State v. Herron*, 767 S.W.2d 151, 156 (Tenn. 1989), *overruled in part by Yancey*, 69 S.W.3d at 559. To carry the burden, an applicant should provide the prosecutor with "as complete an application as circumstances warrant." *State v. Winsett*, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993).

Despite an applicant's burden to demonstrate eligibility and suitability for pretrial diversion, the prosecutor also has specific obligations, especially when denying the application. *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999). When considering applications for pretrial diversion, the prosecutor should focus on a defendant's amenability to correction. *Id*. at 156. Additionally, the prosecutor must consider the circumstances of the offense, the defendant's

criminal record, the defendant's social history, the physical and mental condition of the defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the defendant. *Id*.; *see also Hammersley*, 650 S.W.2d at 355.

"[T]he circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been considered as well " and only when the circumstances are of such overwhelming significance that they necessarily outweigh all other factors. *Curry*, 988 S.W.2d at 158; *see also State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993). Although this Court has affirmed the denial of pretrial diversion where the failure to admit the crime and/or express remorse revealed that a defendant had been less than truthful with the court, remorse per se is not a factor in determining suitability for pretrial diversion, and the failure of a defendant to admit guilt is not, in and of itself, a proper basis for denying diversion. *See State v. Nease*, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986); *State v. Dewey L. Clark*, No. 03C01-9706-CR-00227, 1998 WL 397370, at *3 (Tenn. Crim. App. at Knoxville, July 16, 1998).

A denial of the application must be in writing and must contain not only an enumeration of the evidence the prosecutor considered but also a discussion of the weight given to each factor and of why unfavorable factors outweigh favorable ones. *State v. Pinkham*, 955 S.W.2d 956, 960 (Tenn. 1997); *Curry*, 988 S.W.2d at 157. Moreover, the prosecutor "should identify any factual disputes between the evidence relied upon and the [defendant's] application." *Pinkham*, 955 S.W.2d at 960.

If the application is denied, a defendant may seek a writ of certiorari in the trial court. T.C.A. § 40-15-105(b)(3). When doing so, the compiled record should be attached to the petition. *Winsett*, 882 S.W.2d at 810. "[I]n the petition, the defendant should identify any 'disputed fact' which the prosecutor has not identified." *State v. Lane*, 56 S.W.3d 20, 26 (Tenn. Crim. App. 2000) (quoting *Winsett*, 882 S.W.2d at 810). The defendant has the burden of proving that the prosecutor abused his or her discretion in denying diversion, which may entail showing the record lacks any substantial evidence supporting the prosecutor's denial of pretrial diversion. *See State v. Watkins*, 607 S.W.2d 486, 488 (Tenn. Crim. App. 1980); *Lane*, 56 S.W.3d at 26.

When considering a petition for certiorari regarding a denial of pretrial diversion, the trial court must limit its consideration to the evidence which was before the prosecutor and to the reasons given by the prosecutor in denying diversion. *State v. Brown*, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985). The trial court may conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant; the court may not hear additional evidence. *Curry*, 988 S.W.2d at 157-58. The trial court must also adhere to the same case-by-case

balancing procedure that is imposed upon the prosecutor and must state its findings in writing. *Herron*, 767 S.W.2d at 156.

If the trial court declines to reverse the prosecutor's denial of diversion, the defendant may seek interlocutory review in this court. *See generally* Tenn. R.App. P. 9, 10; Tenn. R. Crim. P. 38. If review is granted by this court, our review is confined to determining whether the trial court's determination is supported by a preponderance of the evidence. *Curry*, 988 S.W.2d at 158.

## A. Absence of Written Order

Before addressing each of the Defendants' contentions, we address the State's assertion that this case should be remanded because the trial court failed to file a written order denying the Defendants' petitions for writs of certiorari. The State cites an opinion of this Court that stated that the trial court "must state its findings in writing." *State v. Cody Matthew Headrick*, No. E2008-02598-CCA-MR3-CD, 2009 WL 4505440, at *10 (Tenn. Crim. App., at Knoxville, Dec. 4, 2009). In that case, this Court stated:

Upon receiving a petition for certiorari filed by an aggrieved applicant for pretrial diversion, the trial court must then follow a prescribed procedure:

(1) The trial court limits its consideration to the evidence which was before the prosecutor and to the reasons given by the prosecutor in denying diversion. *State v. Brown*, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985).

(2) The trial court may conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant; the court may not hear additional evidence. *Curry*, 988 S.W.2d at 157-58.

(3) The trial court must also adhere to the same case-by-case balancing procedure that is imposed upon the prosecutor. *Herron*, 767 S.W.2d at 156.

(4) The trial court must state its findings in writing. *Id.* If the trial court declines to reverse the prosecutor's denial of diversion, the defendant may seek interlocutory review. *See generally* Tenn. R. App. P. 9, 10; Tenn. R. Crim. P. 38. If review is granted by this court, our review is confined to determining whether the trial court's determination is supported by a preponderance of the evidence. *Curry*, 988 S.W.2d at 158.

*Id*. at *10.

We first note *Hendrick* is an unpublished opinion and, as such, constitutes only persuasive authority and not binding precedent. Tenn. S. Ct. R. 4(H)(1); *State v. Transil*, 72 S.W.3d 665, 667 (Tenn. Crim. App. 2002). Further, the statement in *Hendrick* is dicta in that the facts in that case included that the trial court had, in fact, filed a written order denying the defendant's petition for a writ of certiorari. *Hendrick*, 2009 WL 4505440, at *4-5. Finally, *Herron*, the published case cited by the *Hendrick* Court, does not, in our view, hold that a written order by the trial court is a necessary prerequisite to our review. *Herron*, 767 S.W.2d at 156. While it is a better practice for a trial court to issue a written order, and for the parties to ensure that such order is included in the record, we conclude that in this case, where the trial court's findings were thoroughly articulated in the record, we may still review the issues contained herein on their merits.

## B. Defendant Craven

Defendant Craven contends that the prosecutor abused her discretion when she denied him pretrial diversion because she based her decision on irrelevant factors, including the Defendant's denial of responsibility for his actions as relevant to amenability to correction and the fact that Warren County had no applicable supervising agency. Further, Defendant Craven asserts that the prosecutor abused her discretion by not assigning specific weight to his criminal history and the deterrence value to the Defendant and others. Finally, Defendant Craven asserts that the trial court did not apply the correct standard of review when it denied his petition for a writ of certiorari.

### 1. Factors Supporting Denial of Pretrial Diversion

Defendant Craven suggests that the prosecutor abused her discretion when she found that he was not amenable to correction and she denied probation based upon the fact that Warren County had no appropriate supervising agency. He also challenges the prosecutor's focus on his denial of responsibility as evidence that he was not amenable to correction, which he says has no factual basis or relevance to his amenability to correction.

In the prosecutor's written response to Defendant Craven's application for diversion, she considered the Defendant's social history and health. The State District Attorney General stated that the Defendant, who was sixty-one years old, was married with three children and two step-children, all of whom were adults. She noted that Defendant Craven had worked for the Warren County Board of Education for twenty-eight years and that multiple letters of recommendation had been filed on his behalf. The response noted that Defendant Craven suffered from a chronic lung condition, preventing him from engaging in vigorous physical activity. Defendant Craven had no known criminal history. The District Attorney General assigned considerable favorable weight to these factors.

Because our review includes consideration of both the trial court and the prosecutor's decisions, we quote the following from the State's response to Defendant Craven's application:

### 3. AMENABILITY TO CORRECTION:

In responding to question number 32 on the Initial Application for Pre-Trial Diversion, the Defendant is asked for his version of the facts of the offense. In summary, Defendant Craven states that he did not work on the bus himself, he did [not] instruct anyone else to work on the bus, he did not know that any mechanic who was employed to work under his supervision had worked on the bus, he did not know that he should not have permitted anyone to work on the bus, apparently because he did not contemplate that the condition of the bus warning light system would be relevant to the investigation of the accident, he attributed so little significance to the issue of whether the lights on the bus were working that when a Trooper asked him if the lights were working he yelled the question into the garage, and when "someone" yelled back yes, he relayed that information to the Trooper without further investigation. He blames the officers at the bus garage for not advising him in a timely manner that the bus was considered evidence and should not be tampered with and he blames the officers who interviewed him at the District Attorney's office for not allowing him to fully explain his answers to them. In fact, Defendant Craven knew that the lights on the bus were not working properly because he had spoken with the bus driver about it over the radio. He knew about the accident and the fact that the bus was present at the accident scene. With twenty-eight years experience as a school bus mechanic he certainly anticipated that the question of whether the lighting systems on the bus were working properly would be important to he accident investigation. Yet, after having seen two (2) of his mechanics working on the bus with the access door to the lighting system fuse panel open he claims that this did not put him on notice that he should tell inquiring law enforcement officers that the bus lights may have been repaired when they conducted their investigation to determine if the lights were working.

Persons who deny responsibility for their actions are generally deemed to be less amenable to correction than those who accept responsibility. If [Defendant] Craven believes that he has done nothing wrong, a sentiment he expresses in his Application for Pre-Trial Diversion and has apparently expressed to several of the people who wrote letters of recommendation for him as well, then it would be unjust to impose any form of "correction" on [Defendant] Craven. A person who doesn't believe that he has done anything wrong has no reason not to engage in the same conduct again. Similarly, a

person who tampers with evidence and makes false reports to law enforcement officers is less likely than others to be amenable to correction because they believe they can outsmart law enforcement and deflect responsibility away from themselves.

Given the Defendant's social history, the State would presume the Defendant to be amenable to correction because of his demonstrated ability to conform to social norms. However, this presumption is mitigated by the fact that the Defendant refuses to accept responsibility for his conduct by arguing that for some reason he was unable to comprehend the significance of what was going on around him. Hence, as to the issue of amenability to correction, the State grants slight weight in favor of the Defendant's petition for diversion.

## 4. **DETERRENT EFFECT:**

Defendant [Craven's] social history would suggest that the Defendant does not typically engage in criminal conduct and the likelihood that he would become a repeat offender is very remote. While one would not anticipate, based upon Defendant's social history, that he is going to go out and commit murder, burglary or any other violent offense, the likelihood that he might commit a similar offense to the one for which he has been indicted is more significant. While the offense Defendant is charged with committing arises out of what would generally be considered a very unique set of circumstances, the fact that this Indictment arises out of Defendant's responsibility for the mechanical condition of a school bus and the further fact that the Defendant continues in his current employment where he remains responsible for the mechanical condition of a large number of school buses, a scenario like the one with which we are confronted could reasonably be expected to reoccur. To allow the Defendant to disclaim any responsibility for his role in this offense would avoid any day of reckoning in Court where he is called upon to explain his conduct and face the judgment of a jury of his peers will offer little deterrent effect specific to this individual.

## 5. **INTEREST OF THE PUBLIC**:

One of the foremost concerns of our citizens is that we have a criminal justice system that functions effectively. The reliability of our criminal justice system is at stake when there are allegations that evidence has been altered or destroyed and that officers have been misled by false statements made by potential witnesses. It is essential to the maintenance of the public confidence

in the judicial system that when such allegations arise they are fully investigated and prosecuted. Resolving this case without a finding regarding the Defendant's innocence or guilt would do little to ensure the public that the integrity of our judicial system is being protected.

This is a case that is of public concern in that it involves the transportation of students in our public school system to which members of our community are compelled to entrust the well-being of their children on a daily basis. The fact that the Defendant is an employee of that public school system and stands accused of giving false statements to officers investigating an accident and of tampering with evidence raises concerns that there is an attempt to cover up conduct of school system employees which put the lives of school students in danger. Allegations of this nature should be resolved in a public hearing which will determine if there is criminal responsibility and if so where it lies. Granting Pre-Trial Diversion will preclude a public hearing on these issues. It will leave the impression that government employees can lie with impunity while shoplifters and petty thieves face criminal convictions and possible sentencing. Yet in many instances, the deceitful word can do far more harm to society than a deceitful act.

These matters related to the integrity of the criminal justice system and the public interest in seeing these matters resolved in an adversary setting are entitled to considerable weight and in this case that weight is contrary to the granting of Pre-Trial Diversion.

While the prosecutor ultimately concluded that the factor regarding Defendant Craven's amenability for correction weighed slightly in Defendant Craven's favor, she mentioned several considerations that diminished this factor's weight. She indicated that his version of the facts did not seem compelling, that his false statements to police indicated his lack of respect for law enforcement, that his denial of responsibility made him less amenable to correction, and that nothing would prevent him from engaging in this conduct again because he did not believe that there was anything wrong with is conduct.

At the hearing on the petition for a writ of certiorari, Defendant Craven agreed that the facts enumerated in the State's response to his pretrial diversion request were accurate. Those facts clearly indicate that bus driver Nunley radioed Defendant Craven to inform him that her warning system stop sign and lights were not operating properly. Defendant Craven was aware bus driver Nunley was going to complete her morning route, and he told her to be careful. Defendant Craven was then informed that an accident involving bus driver Nunley's bus had occurred, and he went to the scene of the accident. The bus was not at the accident, and

-11-

Defendant Craven returned to the bus garage, where the bus was located and where Defendant Craven saw mechanics working on the bus. Defendant Craven later met with a State Trooper who had come to investigate the accident. He did not inform the trooper of Nunley's previous radio transmission, and he did not inform him that the mechanics had been working on the bus. When Defendant Craven was questioned by the district attorney's office, he repeatedly denied having he had any knowledge of anyone working on the bus before the trooper arrived. He later finally admitted that he had seen one of his mechanics at the access door and one on the bus before the trooper arrived.

In his application for diversion, Defendant Craven denied knowing that any mechanic who was employed to work under his supervision had worked on the bus or that he should not have permitted anyone to work on the bus. We agree with the prosecutor that this weighs against his amenability for correction. These statements seem unlikely to be accurate, given other evidence in this case. The credibility of Defendant Craven's insistence that he believed the bus driver's report of her warning system malfunctioning and his plan to fix the bus during school hours would not have interested police is also suspect. Further, it also seems unlikely that Defendant Craven had no idea that his two mechanics, whom he admittedly saw at the access door of the bus and on the bus, were not working on the bus. Especially considering that he, shortly thereafter, saw the trooper activate the warning system of the bus and videotape the system and lights working properly.

It is clear from the State's response to the application for pretrial diversion that the prosecutor found Defendant Craven's version of the facts contained therein unlikely to be accurate. When reviewing a trial court's denial of prosecutorial diversion, this Court has affirmed the denial of diversion based upon a finding by the prosecutor that the defendant was not truthful and therefore not amenable to correction. *See State v. Frank Ray Ruth*, No. E2006-01008-CCA-R10-CD, 2007 WL 316408, at *9 (Tenn. Crim. App., at Knoxville, Feb. 5, 2007) (affirming prosecutor's denial of pretrial diversion when the district attorney stated that the defendant was not amenable to correction, citing his untruthfulness with investigators and his behavior during the investigation), *no Tenn. R. App. P. 11 application filed*; *State v. Mark Gordon Taylor*, No. 03C01-9403-CR-00096, 1995 WL 465546 (Tenn. Crim. App., at Knoxville, August 8, 1995) (affirming prosecutor's denial of diversion based upon the defendant's refusal to accept responsibility, his untruthfulness, and his abuse of his position of trust as a public school teacher), *no Tenn. R. App. P. 11 application filed*.

Defendant Craven also takes issue with the prosecutor's statement that "[p]ersons who deny responsibility for their actions are generally deemed to be less amenable to correction than those who accept responsibility." He asserts that there this is no "established" case law to support this proposition. This Court, however, has stated "any failure on [the defendant's] part to accept responsibility for his actions . . . reflects upon his amenability for rehabilitation."

-12-

*State v. Timothy Lane*, No. 01C01-9506-CC-00213, 1996 WL 499517, at *2 (Tenn. Crim. App., at Nashville, Sept. 5, 1996), *no Tenn. R. App. P. application filed*. Further, we have affirmed the prosecutor's denial of pretrial diversion based upon a defendant's lack of acceptance of responsibility. *State v. Nease*, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986) (holding that a defendant's failure to be completely truthful about the circumstances of the crime committed and to take full responsibility made the defendant a poor candidate for diversion). *Compare State v. Lane*, 56 S.W.3d 20, 28 (Tenn. Crim. App. 2000) (holding that an admission of guilt may not be a prerequisite to pretrial diversion).

We conclude that the prosecutor did not abuse her discretion when she determined that the evidence only "slightly" weighed in favor of the Defendant's amenability for correction.

Defendant Craven next suggests that the prosecutor abused her discretion because she based her denial of his application for pretrial diversion upon the fact that Warren County had no applicable supervising agency. The Defendant makes no citation to the record indicating where the prosecutor considered this factor. The rules of this court direct waiver of issues not supported by citation to authorities or appropriate references to the record. *See* Tenn. R. Ct. Crim. App. 10(b). Although we have determined that Defendant Craven has waived this issue, we will address this issue on the merits elsewhere in our opinion, as it pertains to the other Defendants.

## 2. Specific Weight Assigned to Factors

Defendant Craven next asserts that the prosecutor erred by not assigning specific weight to the relevant factors of the Defendant's criminal history and the deterrence value to the Defendant and others.

In the State's response to Defendant Craven's application for pretrial diversion, the prosecutor often at the end of the consideration of each factor noted the weight assigned to each factor. At the conclusion of considering the circumstances of the offense, the prosecutor stated, "the fact that Defendant [Craven] acted intentionally with the purpose of hindering [the] investigation of this accident and thus exposed another individual to an increased likelihood that said person would suffer criminal prosecution weighs heavily against granting the Defendant diversion." The prosecutor concluded many of the sections in this manner, stating whether each factor weighed in favor of or against pretrial diversion. Defendant Craven, however, takes issue with the fact that the prosecutor did not assign "specific weight to the factor of Defendant's criminal history" and did not assign "specific weight to the factor of deterrence value."

The Defendant is correct that the prosecutor did not assign specific weight to his lack

of any prior criminal history and the deterrence value. It is clear, however, that the prosecutor considered and weighed these factors. She also clearly discussed the factors weighing against the Defendant and why those factors outweighed factors weighing toward granting him diversion. As previously stated, a denial of the application must be in writing and must contain not only an enumeration of the evidence the prosecutor considered but also a discussion of the weight given to each factor and of why unfavorable factors outweigh favorable ones. *State v. Pinkham*, 955 S.W.2d at 960; *Curry*, 988 S.W.2d at 157. We conclude that the prosecutor substantially complied with these requirements in her written denial of the application for pre-trial diversion. In our view, the prosecutor did not abuse her discretion in her denial of the Defendant's application.

### 3. Trial Court's Standard of Review

Finally, Defendant Craven asserts that the trial court did not apply the correct standard of review when it denied his petition for writ of certiorari. He asserts that the trial court never stated that "prosecutor's decision was supported by substantial evidence," which, he asserts is required by law.

The Defendant is correct that in order for the trial court to determine whether the district attorney general has abused his or her discretion, it must determine whether the district attorney general has considered all of the relevant factors and whether substantial evidence existed to support the district attorney general's denial of diversion. *Curry*, 988 SW.2d at 158.

The trial court stated that, based upon the its review of the State's written denial, the letters provided on Defendant Craven's behalf, and the arguments of the parties, the State had not abused its discretion in refusing to grant Defendant Craven pretrial diversion. The trial court finding necessarily implies that the district attorney general considered all the relevant factors and that substantial evidence existed to support her denial of diversion. We conclude that the evidence supports the prosecutor's denial of pretrial diversion and that the evidence does not preponderate against the trial court's denial of writ of certiorari. Defendant is not entitled to relief on this issue.

### C. Defendant Pope

Defendant Pope contends that the prosecutor abused her discretion when she denied him pretrial diversion because: (1) she based her decision on the fact that Warren County does not have a supervising agency; (2) she based her decision on the fact that he did not admit guilt; and (3) she failed to properly weigh and consider all the relevant factors when she determined he was not a "qualified defendant." He further contends that the trial court did not apply the proper standard of review when it denied his petition for writ of certiorari.

### 1. Factors Supporting Denial of Pretrial Diversion
### a. Warren County Supervisory Agency

The District Attorney General amended her original written denial of Defendant Pope's pretrial diversion request to include that:

> The District Attorney has just received Attorney General Opinion Number 10-07 filed January 22, 2010, . . . wherein the Attorney General's office is asked to express an opinion on whether the Board of Probation and Parole is authorized to supervise an individual placed on pre-trial diversion pursuant to Tennessee Code Annotated § 40-15-101, *et seq*. It is the opinion of the Attorney General's office that the Board of Probation and Parole is not statutorily authorized to supervise individuals participating in a pre-trial diversion program because they have not been "convicted of a crime."

The State went on to note that granting a defendant pretrial diversion under these circumstances would not be in the best interest of the defendant, in that he would not be assisted with rehabilitation. The State also noted that granting diversion would not be in the best interest of the public, in that the defendant would not receive the appropriate supervision.

At the hearing on Defendant Pope's petition for certiorari, the Assistant District Attorney addressed this issue, telling the trial court that the Attorney General's opinion was only one factor considered and that it was considered after the District Attorney had already denied pretrial diversion. He stated:

> We had already offered the Court our position on the matter [in our response to Defendant Pope's request for pretrial diversion] and [the Attorney General's opinion] was filed as an amendment and it did not change the ultimate outcome but certainly it was a factor. When it came to our attention we thought it should be considered.

We first conclude that the District Attorney General abused her discretion by considering the Attorney General's opinion. Considerations for the grant or denial of pretrial diversion should be based upon the factors enumerated in the statute, and the administration of pretrial diversion should not be considered when determining whether a defendant is entitled to diversion. To hold otherwise would be to allow defendants applying for pretrial diversion in different counties to be treated differently, depending upon the resources of that county, when all the counties are governed by one pretrial diversion statute created by our Legislature.

-15-

While we so hold, in this unique case, reversal is not necessary. The District Attorney General denied the Defendant pretrial diversion based upon other considerations and only later amended that to include the Attorney General's opinion as a consideration. The fact that the State posited that the Attorney General's opinion provided additional support for the denial is of little or no consequence to the denial itself, which was based on the other factors listed in the State's original response. We conclude that Defendant Pope is not entitled to relief on this issue.

### b. Admission of Guilt

Defendant Pope next contends that the prosecutor erred when she denied him pretrial diversion because she based her decision on the fact that he did not admit guilt. When the prosecutor denied Defendant Pope's diversion request, she stated:

> Mr. Pope's prior criminal history [which includes three Driving Under the Influence convictions] and his failure to candidly address his involvement in this case and thereby accept responsibility for his actions both suggest that Mr. Pope is not amenable to correction. In previous decisions, the Appellate Courts have indicated that amenability to correction is one of the most critical factors to consider in determining eligibility for pretrial diversion. Thus this factor would weigh heavily against Defendant being granted diversion.

As previously stated, however, this Court has held "any failure on [the defendant's] part to accept responsibility for his actions . . . reflects upon his amenability for rehabilitation." *Lane*, No. 1996 WL 499517, at *2. The prosecutor's denial of pretrial diversion may be based in part upon a defendant's lack of acceptance of responsibility. *State v. Nease*, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986) (holding that a defendant's failure to be completely truthful about the circumstances of the crime committed and to take full responsibility made the defendant a poor candidate for diversion). We conclude that the prosecutor did not abuse her discretion when she considered Defendant Pope's failure to accept responsibility for his actions when she denied his request for pretrial diversion. Defendant Pope is not entitled to relief on this issue.

### c. Relevant Factors

Defendant Pope contends that the prosecutor failed to properly weigh and consider all the relevant factors when she determined he was not a "qualified defendant." He notes that he presented nearly thirty letters of recommendation from friends, neighbors and colleagues, who all described him as a man of impeccable character. The Defendant states, "Even if the prosecutor considered Mr. Pope's favorable social history, lack of criminal history, and potential for rehabilitation, she failed to clearly and explicitly assign a weight to those factors

. . . ."

We first note that the Defendant has a prior criminal history in that he has been convicted on three occasions for Driving Under the Influence and also of Failure to Yield to an Emergency Vehicle. When considering his social history, the State noted that, although the Defendant submitted letters on his behalf, many of which impressed the State, the authors indicated that their support was based on Defendant Pope's insistence that he had been falsely accused. The State also expressed concern that these letters did not address the Defendant's DUI convictions or that he served six months in jail for his DUI, third offense, conviction.

Finally, while the prosecutor did not assign specific weight to all of the factors she considered, it is clear from reading the entirety of the response that she carefully weighed and considered these factors. She clearly discussed the factors weighing against the Defendant and why those factors outweighed factors in favor of diversion. As previously stated, a denial of the application must be in writing and must contain not only an enumeration of the evidence the prosecutor considered but also a discussion of the weight given to each factor and of why unfavorable factors outweigh favorable ones. *Pinkham*, 955 S.W.2d at 960; *Curry*, 988 S.W.2d at 157. We conclude that the prosecutor substantially complied with these requirements and that she did not abuse her discretion in her denial.

## 2.  Trial Court's Standard of Review

Defendant Pope next contends that the trial court did not apply the proper standard of review when it denied his petition for writ of certiorari. He asserts that the trial court should have examined each relevant factor to determine whether the prosecutor had considered that factor and whether the prosecutor's finding with respect to that factor was supported by the evidence. When the trial court denied Defendant Pope's petition for writ of certiorari, the trial court stated, "[A]s to [D]efendant Pope, there is no abuse of discretion in the District Attorney['s] not entering into a pretrial diversion with Mr. Pope."

*State v. Curry* requires a trial court, in order to determine whether the district attorney general has abused her discretion, to examine whether the district attorney general considered all of the relevant factors and whether substantial evidence existed to support the district attorney general's denial of diversion. 988 SW.2d at 158. The trial court's finding herein necessary implies that the district attorney general considered all the relevant factors and that substantial evidence existed to support her denial of diversion. The Defendant is not entitled to relief on this issue.

## D.  Defendant Davenport

Defendant Davenport raises three issues: (1) whether the District Attorney General properly analyzed the relevant factors when she denied him pretrial diversion; (2) whether the District Attorney General improperly mitigated his suitability for pretrial diversion by his refusal to confess to criminal activity; and (3) whether the trial court erred when it denied his request to call the District Attorney General as a witness at the hearing on his petition for writ of certiorari challenging her denial of his pretrial diversion request. The Defendant's first and second issues both relate to the factors considered by the District Attorney General, and we will consider them together.

## 1. Relevant Factors

Defendant Davenport contends that the prosecutor abused her discretion when she denied his request for pretrial diversion. He cites that he is a lifelong resident of Warren County, Tennessee, that he has been active in the community, and that he has been employed with the Warren County Board of Education since 1985. Defendant Davenport notes that he has never before been arrested or convicted of any crime. He offered five witnesses who attested to his good character. Therefore, he asserts, he demonstrated to the State that he is eligible and suitable for pretrial diversion.

In the State's response to Defendant Davenport's request for pretrial diversion, the District Attorney General cited the Defendant's social history, including his work history and community involvement, as being entitled to "considerable weight in favor of granting him pre-trial diversion." When considering his amenability to correction, however, the District Attorney General stated Defendant Davenport's "unwillingness to admit that he knew that the bus had been involved in the accident, information which was common knowledge in the bus garage at the time, and his assertion that he was somehow able to make repairs to the bus without knowledge as to the nature of the malfunction that he was repairing are simply not credible." The District Attorney General concluded that the Defendant's "reputation as a law abiding citizen is mitigated by his unwillingness to accept responsibility for his conduct and the State grants slight weight in favor of the Defendant's petition for pre-trial diversion." The State went on to cite the interest of the public as the primary basis upon which she denied the Defendant's request for pretrial diversion.

As previously stated, however, this Court has held "any failure on [the defendant's] part to accept responsibility for his actions . . . reflects upon his amenability for rehabilitation." *Lane*, No. 1996 WL 499517, at *2. Further, we have affirmed the denial of pretrial diversion, both judicial and prosecutorial, based upon a defendant's lack of acceptance of responsibility. *See Electroplating, Inc.*, 990 S.W.2d at 229 (denial of judicial diversion warranted not only by the circumstances of the offense, but also by the defendant's failure to accept responsibility for the offense); *Anderson*, 857 S.W.2d at 574 (observing that the trial court is in the better

possession to assess a defendant's sincerity in accepting responsibility for the offense which is a relevant factor in determining his or her amenability to rehabilitation); *Nease*, 713 S.W.2d at 92 (holding that a defendant's failure to be completely truthful about the circumstances of the crime committed and to take full responsibility made the defendant a poor candidate for diversion). We also find it improbable that Defendant Davenport, who was present at the garage when bus driver Nunley's "hysterical" calls were heard throughout the garage, was unaware that the bus had been involved in an accident. We do not find persuasive Defendant Davenport's contention that requiring him to be more forthcoming about whether he was aware there had been a bus accident is "tantamount to requiring that he confess to criminal activity in order to receive favorable consideration for pretrial diversion."

We conclude that, while the Defendant provided favorable evidence to support his request, the District Attorney General did not abuse her discretion when she determined that his lack of credibility about the circumstances of the offense, in addition to the public interest weighed against granting his pretrial diversion request. The Defendant is not entitled to relief on this issue.

## 2. Calling District Attorney General As a Witness

Defendant Davenport next contends that the trial court erred when it denied his request to call the District Attorney General as a witness at the hearing on his petition for writ of certiorari. In support of this contention, he cites *State v. Duane A. Hendrick*, as recognizing the practice of calling the District Attorney General at a hearing for writ of certiorari. 1997 WL 786173, at *4 (Tenn. Crim. App., at Jackson, Dec. 23, 1997), *no Tenn. R. App. P. 11 application filed.* In *Henderick*, this Court stated,

> In the case before us, the appellant desired the testimony of the assistant district attorney relating to the failure to consider appellant's amenability to correction and her reliance upon deterrence. We find that the appellant was not prejudiced by the failure to require testimony. It is apparent from the letter of denial that all positive factors submitted by appellant were considered. It is implicit that this included appellant's amenability to correction. It is also apparent from the letter of denial that the deterrence factor related to other commercial truckers. We find this to be a proper consideration for denial of pre-trial diversion. In short, the appellant was not prejudiced by the refusal to require the prosecutor to testify.

*Id*. We first conclude that the language of *Hendrick* does not, in our opinion, recognize the practice of calling the District Attorney General to testify. First, and perhaps most importantly, the trial court's standard of review when considering a writ of certiorari of this type is based

upon only the evidence that the prosecutor considered when denying diversion. *State v. Winsett*, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993). It would seem, therefore, that testimony from the District Attorney General would be mostly irrelevant to that review. Further, for all practical purposes, it would impose a great burden upon the District Attorney General to appear to respond to every denial of pretrial diversion, even after having responded to the request in writing. Second, as noted by the *Hendrick* Court about the defendant therein, even were it error to refuse to Defendant Davenport's request to have the District Attorney General testify, any error was harmless in that Defendant Davenport was not prejudiced by this error. Defendant Davenport is not entitled to relief on this issue.

### III. Conclusion

Therefore, we conclude that the trial court's determination that the prosecutor properly considered, articulated, and weighed all relevant factors is supported by a preponderance of the evidence. The judgments of the trial court are, therefore, affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE