IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2018

**STATE OF TENNESSEE v. DESTINY WHITE**

**Appeal from the Criminal Court for Shelby County**
**No. C1702341      Glenn Ivy Wright, Judge**

_____

**No. W2017-01649-CCA-R3-CD**

_____

The defendant, Destiny White, appeals her Shelby County Criminal Court conviction for voluntary manslaughter, claiming the trial court erred by denying her request for judicial diversion. After a review of the record and applicable law, we conclude the trial court placed undue weight on the victim's death in support of its decision to deny judicial diversion and failed to explain how, if at all, it considered and weighed other applicable factors. Therefore, we reverse the judgment of the trial court and remand the matter to the trial court for reconsideration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed,**
**Case Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Claiborne Ferguson, Memphis, Tennessee, for the appellant, Destiny White.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Omar Malik and Meghan Fowler, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On May 16, 2017, the defendant pled guilty to voluntary manslaughter. As a term of the plea agreement, the defendant received a six-year sentence with the manner of service, including the defendant's request for judicial diversion, to be determined by the trial court. During the plea hearing, the State summarized the facts supporting the defendant's conviction as follows:

On January 16, 2017, officers responded to a call at 4101 Maumee in Memphis, Tennessee, Shelby County.

Witness, Angel Taylor, advised that her father, the victim, Torey Gillard, and the [d]efendant, Ms. Destiny White, were involved in an altercation in the kitchen. The [d]efendant retrieved a knife from the cabinet and stabbed the victim, Gillard, in the chest, upper right arm two times, in the back of his head once.

The victim, Gillard, was pronounced dead on the scene by the Memphis Fire Department and paramedics. [The defendant] went to 4087 Maumee and advised a complainant a Lonnie Taylor, who was the victim's mother, that she had just stabbed her son – excuse me, that she had just stabbed her boyfriend, the victim.

[The defendant] returned to 4101 Maumee where she was struck in the forehead by Angel Taylor, who witnessed the incident, with a blender. The [d]efendant was transported to Regional One along with the victim, and the victim was transported to the morgue for examination as he was pronounced dead on the scene. The [d]efendant ultimately was arrested, transported to 201 Poplar Homicide Bureau where she was advised of her *Miranda* rights. And, after she waived her rights, she gave the typed statement admitting that she stabbed the victim, Gillard, after an altercation.

As a result of the defendant's guilty plea, a sentencing hearing was held on July 18, 2017. During the hearing, Andre Davis, a friend of the victim, testified the victim was a hard-working man and a community activist. Mr. Davis stated that the victim was a deacon in his church and worked hard to provide for his family. On cross-examination, Mr. Davis denied having ever seen any domestic violence between the victim and the defendant.

The victim's daughter, Detoria Hamilton, was the next witness called by the State. Ms. Hamilton testified the defendant was "her best friend" and a "wonderful, loving person." On cross-examination, Ms. Hamilton stated the victim never hit her and she never witnessed domestic violence between the victim and the defendant.

After Ms. Hamilton testified, the State offered the unsworn testimony of three family members, Angel Taylor, Michael Taylor, and Lottie Taylor. Angel Taylor, another daughter of the victim, testified she witnessed the altercation between the victim and the defendant. According to Angel Taylor, the victim and the defendant were arguing about the defendant's car and the fact the victim wanted to borrow it to drive to

the hospital. The defendant had the keys and ran into the kitchen. The victim followed. As the two argued, the defendant "swung – and I did not know [the defendant] had a knife in her hand, and [the] only thing I saw after that was [the victim] drop to the floor and that's all."

Michael Taylor, the victim's son, informed the trial court that the victim was "the best dad." And, while the victim had made mistakes in his life "twenty years ago," the victim did not deserve "to go out like that." According to Michael Taylor, he has had nightmares since the victim was killed and can only sleep about four hours a day. He asked the trial court to impose the maximum sentence and deny the defendant's request for diversion.

Next, the State called Lottie Taylor, the victim's mother. Ms. Taylor informed the trial court that the defendant came to her house after the murder and confessed that she "stabbed" the victim. Ms. Taylor acknowledged her son was not perfect; however, he did not "deserve what he got." Ms. Taylor also asked the trial court to deny the defendant's request for diversion.

The defendant was the final witness to testify during the sentencing hearing. The defendant, who was nineteen years old at the time of the hearing, testified she started dating the victim when she was sixteen and the victim was forty-four. On the day of the murder, the defendant and the victim were arguing about her car. At some point, the defendant grabbed the keys and ran into the kitchen. Fifteen to twenty minutes later, the victim entered the kitchen and demanded the keys. When the defendant tried to leave, the victim hit her, and they began to exchange punches. During the fight, the defendant grabbed a knife in an attempt to defend herself and stabbed the victim. According to the defendant, they fought every day and things were often physical. The defendant claimed, however, that when she called the police, they would not help her. On cross-examination, the defendant admitted the victim did not have a weapon when she stabbed him.

After hearing the testimony of the witnesses and the arguments of the parties, the trial court sentenced the defendant to a term of six years. In denying the defendant's request for diversion, the trial court noted it was taking into account "her family, her school, her health, her criminal [history] or lack thereof, and her statement." Additionally, while not fully explaining to what extent, the trial court noted it also "considered the potential for rehabilitation." After discussing the defendant's and the victim's domestic issues, including physical violence, the trial court concluded the hearing stating,

She has no criminal record. That's the strongest thing in her favor. And that she's a victim of a former child abuse and perhaps domestic violence as well.

Due to the severity of the injury in this case, death, that's the ultimate injury, I just don't think it's appropriate to give her diversion. So I'm going to deny diversion.

Though the trial court denied the defendant's request for diversion, it granted some relief by requiring the defendant to only serve one year of confinement followed by five years on probation.[1]

This timely appealed followed.

## ANALYSIS

On appeal, the defendant contends the trial court improperly denied her request for judicial diversion, arguing the trial court "failed to properly consider the common law factors on the record" and "gave improper weight to the fact that [the defendant's] actions" resulted in the victim's death. The State argues the "defendant's sentence is supported by the proof and was determined in accordance with the applicable sentencing principles." After a review of the record and the applicable law, we conclude the trial court failed to properly consider and weigh the applicable factors and based its decision on the fact the victim died. Thus, we reverse the judgment of the trial court and remand the matter for reconsideration.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing Tenn. Code Ann. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so

---

[1] At the time of the sentencing hearing, the defendant had been incarcerated for seven months.

long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709. The *Bise* standard of review applies to "appellate review for a trial court's sentencing decision to either grant or deny judicial diversion," *State v. King*, 432 S.W.3d 316, 325 (Tenn. 2014), and to "questions related to probation or any other alternative sentence," *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* Tenn. Code Ann. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. *Id.* § 40-35-313(a)(1)(A). "[A] 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *King*, 432 S.W.3d at 326. Following a determination that the defendant is eligible for judicial diversion, the trial court must consider,

> "(a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice – the interests of the public as well as the accused."

*Id.* (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)). Adoption of the *Bise* standard of review for judicial diversion "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion." *King*, 432 S.W.3d at 326.

It appears from the record before us that the trial court denied judicial diversion because a death was involved. A victim's death is involved in every case of voluntary manslaughter, but our legislature has not excluded voluntary manslaughter from offenses for which judicial diversion is a sentencing option. *See* Tenn. Code Ann. § 40-35-313. Additionally, this Court has previously held that a trial court may not rest its decision to

deny judicial diversion to a qualified defendant solely on the grounds that a victim died due to the defendant's crime. *State v. Jared Booth Spang*, No. M2014-00468-CCA-R3-CD, 2015 WL 510921, at *4 (Tenn. Crim. App. Feb. 6, 2015); *State v. Teresa Turner*, No. M2013-00827-CCA-R3-CD, 2014 WL 310388, at *1 (Tenn. Crim. App. Jan. 29, 2014); *see also Chyanne Elizabeth Gobble*, No. E2014-01596-CCA-R3-CD, at *13 (noting that the defendant would have been eligible for judicial diversion if she had been charged with vehicular homicide); *State v. Kyto Sihapanya*, No. W2012-00716-CCA-R3-CD, 2013 WL 6001925, at * 7 (Tenn. Crim. App. Nov. 8, 2013) (noting that "the [d]efendant's conduct satisfied the elements of the offense but nothing exist[ed] in the record suggesting his conduct was aggravated in such a way that justified denying diversion because the victim died[ ]"), *rev'd on other grounds by State v. Sihapanya*, 516 S.W.3d 473 (Tenn. 2014).

Furthermore, the trial court did not review all of the relevant factors or explain "both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." *Electroplating, Inc.*, 990 S.W.2d at 229. For example, the trial court simply stated that it considered the defendant's "family history, her school, her health, her criminal [history] or lack thereof and her statements" as well as "the potential for rehabilitation." However, the trial court failed to explain whether these factors weighed in favor of or against the granting of diversion and how he weighed them in reaching his decision. *See State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (quoting *State v. Herron*, 767 S.W. 2d 151, 156 (Tenn. 1989) (concluding that in a denial of judicial diversion, the trial court must make "more than an abstract statement in the record that [the trial court] has considered [the *Parker* and *Electroplating* factors]"), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). In our view, the trial court's denial of judicial diversion based upon the death of the victim is an abuse of discretion. Therefore, we reverse the trial court's judgment and remand the case to the trial court for reconsideration.

In *State v. Bise,* our supreme court reiterated that "the trial court is in a superior position to impose an appropriate sentence and articulate the reasons for doing so." 380 S.W.3d at 705 n.41 (Tenn. 2012). Because the trial court relied heavily on the victim's death and failed to explain how, if at all, he considered and weighed other applicable factors, we believe this is an appropriate case for remand. *See id.* (noting that "appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence" and that, therefore, certain cases may remain more appropriate for remand). On remand, the trial court should state clearly which of the *Parker* and *Electroplating* factors that it finds are applicable to the defendant's case and should weigh those factors before arriving at a decision to either grant or deny the defendant's request for judicial diversion. *See King*, 432 S.W.3d at 327.

**CONCLUSION**

Based on the foregoing and the record as a whole, we reverse the judgment of the trial court and remand to the trial court for reconsideration.


_____
J. ROSS DYER, JUDGE